## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ARKANSAS,

### AT THE

## JUNE TERM, A. D. 1872.

STEPHEN TRIMBLE v. THE STATE.

GAMING—*Who liable for.*—Wherever a gambling table or gambling device is kept, set up or exhibited within the State, all, whether proprietor, clerks, servants or agents, who aid or assist in the keeping, setting up or exhibition, are liable to indictment and punishment.

SAME—*"Keno," a gaming device.*—The game called and known as *"keno,"* is a game at which money or property may be won or lost, and is a gaming device within the meaning of the statute.

APPEAL FROM DREW CIRCUIT COURT.

HON. HENRY B. MORSE, *Circuit Judge.*

*Montgomery, Attorney General,* for Respondent.

BENNETT, J.—Appellant was indicted in the Circuit Court of Drew county, on the 13th day of April, 1871, for exhibiting a certain gambling device, which was adapted and designed for the purpose of playing a game of chance called *"keno,"* at which game money could be lost or won.

April 15th, the appellant appeared in court, in obedience to the summons issued upon the indictment, and moved the court to quash it; which motion was overruled. Verdict of guilty. Motion for new trial overruled. Appeal taken.

The motion contained the following grounds for a new trial:

*First.* Because the court erred in overruling his motion to quash the summons herein, whereby he was surprised.

*Second.* Because the verdict was contrary to law and evidence.

· *Third.* Because the court overruled the defendant's offer to introduce the evidence of Richard F. Banks, herein.

*Fourth.* Because the court overruled the instructions asked for by the defendant.

*Fifth.* Because the court gave the instructions asked for by the State.

*Sixth.* Because the judgment was not responsive to the verdict.

Why the appellant moved to quash the summons does not appear in the record. The defendant was charged with a misdemeanor, and that was a public offense for which he was liable to immediate arrest and prosecution. The summons, while not in the exact words of a warrant of arrest, yet, it had performed the office of one, and, by its authority, had brought the defendant into court to answer the charge of the grand jury. This was sufficient. This cause, therefore, was no ground for a new trial.

Was the verdict contrary to the law and evidence?

In reviewing this question, we shall take into consideration the second, third, fourth and fifth causes assigned for a new trial, which only raise the question: Is a clerk, servant or employe, equally responsible with the owner of the device?

During the trial, the appellant offered to prove that he was acting in the capacity of a clerk or servant for another person, and was not proprietor of the gambling device. The only object of the proof was to avoid the offense as charged in the indictment, as shown by the instruction asked for by the defendant, which was as follows: "If the jury believe, from the evidence, that the defendant was merely an employe, clerk

or servant in the house where the gaming device was charged to have been exhibited, and had nothing to do with the profits, hazards or chances of the game, and was on wages from the main proprietor, they will find the defendant not guilty."

This instruction was properly overruled. The defendant might keep the keys and have the actual use of the building, admit or exclude visitors, receive money for admission and do every act incident to the keeping of it as a place of public resort for gaming, and still be only a clerk, servant or agent for another. We do not conceive that the statute, under which he is indicted, makes it necessary, in order to charge one with the offense therein prohibited, that he shall directly receive the gain or reward to his own use; although it is obvious that a man would not be likely to be employed to keep such an establishment unless it yielded some gain or profit, and though a clerk, it may be reasonable to infer that his payment came out of these gains.

But a far more satisfactory reason why a clerk, servant or agent for a gambler, in a gambling house, should be liable equal with the proprietor is, that the criminality of the acts prohibited, is in opening and keeping a place of public and common resort, to which access can be had for the purpose of gaming. Thus offering temptations to the idle and dissolute, and endangering the quiet and peace of neighborhoods and communities.

This is the mischief intended to be prohibited, and is as much fostered and created by him who, *de facto*, sets up, keeps or exhibits any gaming table or gambling device, and suffers persons to resort there, whether he does so from his own will or by the procurement of another, and whether for his own emolument or that of another. *Commonwealth vs. Drew*, 3 *Cush.*, 279.

The terms used in the statutes, "every person who shall set up, keep or exhibit any gaming table or gambling device * * of any description, * * * be the name what it may, adapted,

devised or designed for the purpose of playing any game of chance, or at which money or property may be won or lost, shall be deemed guilty of a misdemeanor," etc., manifestly characterized that such gambling devices were dangerous to the morals and peace of the community. The design of the statute was to suppress all such institutions, and we may safely say, that no gambling table or device has ever been invented, by man, that is more pernicious in its influences than that of *"keno."* It is very simple. A child can learn it as well as a grown person. This very simplicity is what renders it so dangerous to the laboring man or mechanic, who, having a few dollars in his pocket, wishes to try his luck, and not having time to learn the principles of other games, trusts blindly to "keno." Like lottery, this game possesses an unusual attraction, owing, no doubt, to the fact that sometimes fifty dollars may be won in five minutes by an outlay of as many cents. It is, however, an hundred chances to one that the player will come nearer losing that amount in trying to win a *"pot."*

If the law was, as asked for by the defendant, that the clerk or agent of the owner could exempt himself from the penalty of the law, by showing that he had kept the gambling table or device for the use and benefit, and by the authority of another person, it would let in all the mischief intended to be prevented by the statute.

A person, residing out of the State and beyond the jurisdiction of its laws, by taking the lease of rooms and, employing unconscionable and unscrupulous clerks and agents, might wholly defeat the salutary object of the law; but such is not the intention. Wherever a gambling table or gambling device is kept, set up or exhibited within the State, all, whether proprietors, clerks, servants or agents, who aid or assist in the keeping, setting up or exhibition, are liable to indictment and punishment.

As to the instruction given on the part of the State, it certainly was law and properly given. It left the jury to deter-

mine, from the evidence, whether the defendant did exhibit such a gambling device as was charged in the indictment. The jury found he did, and properly so, from the evidence as shown on the record.

The witness, Henly, said he saw the defendant on or about the 7th day of April, 1871, assist in the exhibition of a game of "*keno*;" that said game of "*keno*" is a game at which money or property may be lost or won, and that money was lost and won at such exhibition.

Witness, Kidd, said he had seen the defendant, at the time charged in the indictment, exhibiting a device called *keno*. *Keno* is a game at which money or property can be won or lost, and money was lost at that time, but none was risked by the defendant or by the owner of the device. The owner made nothing but commissions.

It was also agreed by the counsel for the defendant and the prosecuting attorney, that *keno* is played by a device containing figures, and the players pay an equal amount for the cards, which are numbered and registered; the first number registered completing a line of figures gets all the money paid for the cards bought, except a commission of ten per cent., which goes to the keno keeper. This was all the evidence.

The two witnesses swore positively that the defendant assisted in, and did exhibit this game of *keno*, and that such game is one at which money may be lost and won. The jury could not have found any other verdict and had any regard for their oaths.

As to the sixth cause assigned for a new trial, upon an examination of the record, it will be seen that the judgment is in almost the exact words of the verdict. No judgment could have been more responsive to a verdict.

No error appearing, the judgment is affirmed.