# THE STATE v. PARKS, Appellant.

### In Banc, December 3, 1901.

**Prosecutions by Information:** EX POST FACTO LAW. Defendant was arrested and tried on an information filed in January, 1901, charging him with having stolen a horse on November 9, 1900. *Held,* for the reasons given in State v. Kyle, 166 Mo. 287, that the amendment to the Constitution permitting prosecutions of felonies by information rather than by indictment, was not *ex post facto* as to this defendant.

Appeal from Moniteau Circuit Court.—*Hon. Jas. E. Hazell,* Judge.

AFFIRMED.

*Edmund Burke* for appellant.

(1)    The circuit court erred in overruling motion to quash the paper deposited with the clerk of the Moniteau Circuit Court in this cause on the third day of January, 1901, in vacation of court, before the January term of the Moniteau Circuit Court, 1901, by N. C. Hickcox, as prosecuting attorney. The information was not verified by the oath of the prosecuting attorney, neither was it verified by the oath of some person competent to testify as a witness in the case; neither was it supported by the affidavit of such person; neither has any such affidavit been filed with said information. R. S. 1899, secs. 2477, 2749, 2750; Constitution 1865, art. 1, par. 24; Laws 1877, p. 355, secs. 5 and 8; R. S. 1879, sec. 1764; R. S. 1889, sec. 4059; R. S. 1899, sec. 2479; State v. Kelm, 79 Mo. .515; State v. Ransberger, 42 Mo. App. 466; State v. Hayward, 83 Mo. 302.    (2)    The offense with which this

defendant is charged is alleged to have been committed on the tenth day of November, 1900, while the amendment changing the mode of prosecutions by indictment or by information did not take effect until the twentieth day of December, 1900, when by the proclamation of the Governor the amendment was declared to have received the requisite vote of the people. This information is claimed to have been filed on the third day of January, 1901, in the vacation of the circuit court with the clerk thereof, and without any order or direction of the court or the judge thereof and was never presented to the court, nor filed by its direction, and the filing thereof by the clerk in vacation was a nullity. Blackstone's Commentaries, book 4, 311; 5 Bacon's Abridgment, 172.

*Edward C. Crow,* Attorney-General, for the State.

(1) Provisions as to prosecutions by information are self-enforcing. Sec. 12, art. 11, Constitution; sec. 28, art. 2, Constitution. It will be seen that these two provisions of the Constitution relative to criminal procedure and the changes made therein, must be construed together, and so construing the same, it is evident at a glance that section 28 of article 2, as amended by resolution number eight, adopted November 6, 1900, absolutely prohibits the convening of a grand jury except upon the order of a judge of a court having power to try and determine felonies. It is well settled that all negative or prohibitory clauses in a Constitution are self-enforcing. Board of Public Schools v. Patten, 62 Mo. 444; Ex parte Snyder, 64 Mo. 58; Cummings v. Winn, 89 Mo. 56; Willis v. St. Paul Sanitarium Co., 16 L. R. A. 282; Hickman v. City of Kansas, 23 L. R. A. 662; Householder v. City of Kansas, 83 Mo. 488; Sheehy v. Railroad, 94 Mo. 574; Keith v. Bingham, 100 Mo. 300; Law v. People, 87 Ill. 385; Hills v. Chicago, 60 Ill. 86; 69 Cal. 479; 61 Cal. 276; 56 Cal.

Vol 165 mo—32

649; 129 Pa. 151; Railroad v. Ihlenberg, 34 L. R. A. 396.
Prohibitory provisions in a Constitution are usually self-enforc-
ing to the extent that anything done in violation of them is
void.    Willis v. St. Paul Sanitarium Co., 16 L. R. A. 285.
The terms, "information" and "indictment," used in the Con-
stitution, are to be understood in their common-law sense.
Ex parte Slater, 72 Mo. 102; State v. Kelm, 79 Mo. 515.  (2)
The provisions became operative when the result of the canvass
was announced December 20, 1900.    Secs. 13 and 15, schedule
to Constitution; Sedgwick's Const. Law, 82; Sec. 7124, R. S.
1899; 59 Barb. 195; Real v. People, 42 N. Y. 276; 62 Ill.
321; 112 Ill. 79; 104 U. S. 754; Duluth v. Railroad, 62 N.
W. 267.    (3) Amendment providing for prosecution by infor-
mation for felonies is not an *ex post facto* law.    In re Wright,
13 L. R. A. 748; Session Acts of Wyoming, 1890-91, ch. 59,
p. 213; Ex parte Bethurum, 66 Mo. 550; State v. Thompson,
141 Mo. 410; Duncan v. Missouri, 152 U. S. 377; Cooley's
Const. Lim., ch. 9, p. 326; Thompson v. Missouri, 171 U. S.
383; 170 U. S. 352.    (4) Information need not be sworn to
nor based upon the oath of another.    R. S. 1899, secs. 2477,
2750; 61 Mo. App. 159; 42 Mo. App. 471; State v. Briscoe,
80 Mo. 644; 88 Mo. 650.    (5) Information at common law
needed no oath.    Blackstone, book 4, pp. 308, 309 and 310;
1 Chitty's Criminal Law, pp. 845 and 846; 1 Bishop Criminal
Procedure, sec. 144; State v. Kelm, 79 Mo. 515; State v. Bris-
coe, 80 Mo. 643.    The Attorney-General, at common law, need
not ask leave of court to file an information.    Blackstone's
Commentaries, book 4, p. 309; 2 Bishop Criminal Procedure,
sec. 142.    The court will not even give him leave to file it for
he does it of right.    107 Mo. 135; 42 Mo. App. 471; 1 Bishop
Criminal Procedure, sec. 142.    Blackstone says, as to the filing
of informations:    "For offenses so high and dangerous in the
punishment or prosecution of which a moment's delay would
be fatal, the law has given the Crown the power of an imme-
diate prosecution."    Blackstone, book 4, 309.    An informa-

tion can be filed with the clerk, and need not be filed in open court.    10 Enc. of Pleading and Practice, pp. 448, 456 ; 42 Texas 88 ; 27 Mo. App. 628 ; 1 Bishop's Crim. Proc., secs. 147, 702, 703 ; 51 Ind. 91 ; State v. Kinney, 81 Mo. 103.

BURGESS, C. J.—On the third day of January, 1901, there was filed in the office of the clerk of the circuit court of Moniteau county, by N. C. Hickcox, prosecuting attorney, the following information against the defendant Ambers Parks, for grand larceny:

"In the Circuit Court of Moniteau County, January term, 1901.

"The State of Missouri,
     against  .
"Ambers Parks.

"N. C. Hickcox, prosecuting attorney within and for the county of Moniteau, in the State of Missouri, under his oath of office and upon his best knowledge, information and belief, informs the court that on the tenth day of November, 1901, at the county of Moniteau and State of Missouri, Ambers Parks, one sorrel horse, of the goods and chattels of one J. T. Ellis then and there being, did unlawfully and feloniously steal, take and carry away, against the peace and dignity of the State.
                    "N. C. HICKCOX, Prosecuting Attorney."

At the same term of court at which said information was filed, defendant was put upon his trial, found guilty, and his punishment fixed at two years' imprisonment in the penitentiary.    After unsuccessful motions for new trial and in arrest, he appeals.

The facts disclosed by the record are substantially as follows:    Defendant lived and had been working for one Long, in Moniteau county, who had in his possession a·horse which belonged to one J. T. Ellis, which he (Long) was in the posses-

sion of under a contract with Ellis. Defendant, having worked for Long, was familiar with the location of the place and with the stock upon the farm, and, according to his own statement, on the ninth day of November, 1900, went to the barn between dusk and sundown and took the horse and rode him to California, where he sold him for $67.50. The testimony of Long is that the horse must have been taken after nightfall, because it was dark when he fed him on the evening of the ninth of November, which was the day he was taken.

After selling the horse, defendant purchased a hat, put his old cap in his pocket and started towards his home, eighteen or twenty miles distant. He was soon overhauled by the sheriff who had learned of the loss of Long's horse, and when arrested, had all but about two dollars of the money in his possession, five or six dollars of which were in his pocket, and the remainder in bills rolled up in his sock. When arrested, according to the testimony of the sheriff, the defendant denied having any money except the five or six dollars, and denied any knowledge of the horse.

Defendant testified that Long told him that he (Long) would take sixty-five dollars for the horse, and said he took the horse to California to sell him, thinking that he could get more than sixty-five dollars and that the remainder would be his. Long's testimony was to the effect that the horse was taken without any authority from him to the defendant so to do.

The defendant introduced several witnesses who swore that up to the time of his trouble he was possessed of a good character for integrity and for truth and veracity in the neighborhood in which he lived.

The defendant's mother and defendant himself testified that he had a long spell of typhoid fever in 1892, and the mother swore that he never was very clear mentally since. The physician, who attended him, testified that he had a very severe spell of typhoid fever. There were one or two other witnesses who testified that defendant was not very bright, but that he

was a married man, attended to his own transactions and worked for a living in the neighborhood in which he lived, being employed most of the time on the farms in that vicinity.

On the eighth day of November, 1900, section 12, article 2, of the Constitution, was amended by a vote of the people so as to authorize the prosecution of felonies by indictment or information as concurrent remedies, except as to land or naval forces or the militia in actual service in time of war or public danger.

Defendant makes the point that no legal complaint was ever filed against him, and that no indictment had been found against him by the grand jury of Moniteau county, and that a felony committed November 9, 1900, should be prosecuted by indictment; that the information was not sworn to by the prosecuting attorney of Moniteau county, nor supported by or based upon the affidavit of a private citizen as required by law, and that the information was improperly signed, in that the prosecuting attorney signed it "N. C. Hickcox," claiming that the letter "N" constituted no name, and is not in compliance with the statutes of Missouri relating to informations.

One of the contentions of the defendant is that the change in the organic law of the State affected his constitutional rights in this, that at the time of the commission of the offense, on the ninth of November, the amendment as to informations was not yet operative and did not become so until the twentieth of December, 1900, and that on the ninth of November, the law requiring felonies to be prosecuted by indictment by a grand jury was yet in force, and that a prosecution in January, 1901, for a felony committed in November, 1900, would operate as an *ex post facto* law so far as defendant is concerned by reason of the change in the form of the prosecution of the crime from that of an indictment to that of an information.

The only points made, to-wit, that the amendment to the Constitution was *ex post facto* in so far as the offense with which defendant stands charged, and the invalidity of the in-

formation filed by the prosecuting attorney against defendant, and all proceedings thereunder, were passed upon in the case of State v. Kyle, 166 Mo. 287, and ruled adversely to defendant's contention. We have nothing to add to what was said in that case, and therefore affirm the judgment. All concur.