## THE STATE v. LOCKET, Appellant.

**Division Two, May 16, 1905.**

1. **GAMBLING DEVICE: Crap Table.** A "crap table" is a gambling device within the meaning of the statute (sec. 2194, R. S. 1899) which makes it a crime to set up or keep "any kind of gambling table or gambling device, adapted, devised and designed for the purpose of playing any game of chance for money or property." It is of the same general class with those devices specifically named in that statute.

2. ———: **Information.** It is held that the information in this case, which is set out in full in the statement, and which charges defendant with setting up and keeping "a certain table and gambling device commonly called a crap table," is in substantial compliance with the requirements of the statute, and is not insufficient for vagueness and uncertainty.

Appeal from Pemiscot Circuit Court.—*Hon. H. C. Riley,* Judge.

AFFIRMED.

*Jere S. Gossom* for appellant.

The table and gambling device, to-wit, "a pair of dice," is not a gambling device under section 2194, Revised Statutes 1899. The table should be designed, adapted, and devised for the purpose of playing a game of chance, such as is named in section 2194. If the game commonly called craps, played by rolling a pair of dice on the ground, or on an ordinary table or elsewhere, was intended to be included in the class of devices mentioned in section 2194, what was the necessity of enacting section 2212, Revised Statutes 1899, for throwing dice and betting thereon? State v. Bryant, 90 Mo. 634; State v. Gilmore, 98 Mo. 206; State v. Edwards, 109 Mo. 320; State v. Dinnisse, 109 Mo. 438.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

(1) The case of State v. Rosenblatt, 185 Mo. 114, is the latest expression of this court on the questions raised by appellant herein. In that case the defendant was charged by indictment with setting up and keeping divers gaming tables and gaming devices, one of which was designated as a "crap table." That indictment was bottomed on section 2194, Revised Statutes 1899, as is the information in the case at bar. The court held that said statute was broad enough to include "any kind of gambling table or gambling device, adapted, devised and designed for the purpose of playing any game of chance, for money or property." It was also held that a crap table was of that class of crimes denounced specifically by the statute; and, while a crap table was not named in the act, under the rule of *ejusdem generis,* the indictment was legal and proper. (2) The second assignment of error is: "The information is so vague, uncertain and indefinite that it fails to inform the appellant of the charge he is expected to answer." The information is sufficient, as it charges

the crime in the language of the statute. This informa-
tion is substantially a copy of the indictment of the
Rosenblatt case, above mentioned. The Rosenblatt
case completely disposes of this point. (3) Appel-
lant argues that, because the game of craps can be
played by dice alone, without the assistance of a table,
therefore, section 2194, does not cover the case. He
refers to section 2212, Revised Statutes 1899, which
provides that: "If any person shall play at any game
whatsoever for money . . . with dice . . .
every such person shall be deemed guilty of a misde-
meanor," etc. This section is designed to punish those
who play the game of craps, or other dice game, as
played by individuals when no table is set up or kept,
"adapted, devised and designed," for gambling pur-
poses. It is made a misdemeanor only, under section
2212, for a person to play at any game whatsoever
with dice; it is made a felony, under section 2194, for
a person to set up or keep any kind of table or gambling
device, adapted, devised and designed for the purpose
of playing any game of chance for money or property,
if the person operating the same shall induce, entice or
permit any person to bet or play at or upon any such
gambling table, or against the keeper thereof. This
latter section is intended to reach the professional
gambler, the other section (section 2212), the ordinary
street or alley crap shooter, who, without a table and
without enticing others to play, gambles with dice. (4)
The verdict not being contrary to the law, the appel-
late court will not invade the jury's province and weigh
any evidence submitted to them. State v. Milton, 117
Mo. 618; State v. Richardson, 117 Mo. 587.

FOX, J.—At the June term, 1904, of the circuit
court of Pemiscot county, Missouri, the prosecuting
attorney filed an information against the defendant,
charging him with setting up and keeping, on June 1,

1904, and prior thereto, a gambling device, commonly called a crap table.

On arraignment, the defendant pleaded not guilty, and the trial occurred at the adjourned session of the June term, before a jury, duly impaneled.

The information upon which this prosecution is based, omitting caption, is as follows:

"L. L. Collins, prosecuting attorney duly elected, commissioned, sworn, qualified, installed and acting as such in and for said county of Pemiscot, in the State of Missouri, upon his said oath and upon his hereto appended oath informs the court and upon his said oath and upon his hereto appended oath does depose, present, aver and charge that said defendant, Dave Locket, on the 1st day of June, A. D. 1904, at the said county of Pemiscot and on divers other days and times prior to and between that day and the day of the filing of this information, at the county of Pemiscot and State of Missouri, did then and there willfully, unlawfully and feloniously set up and keep a certain table and gambling device, commonly called a crap table, the same being then and on said other days and times there a gambling device, adapted, devised and designed for the purpose of playing games of chance for money and property and did then and on said other days and times there unlawfully and feloniously induce, entice and permit certain persons whose names are to this informant unknown to bet and play at and upon a game played at and by means of such gambling device on the side and against the keeper thereof, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Missouri.                    L. L. COLLINS,

"Prosecuting Attorney, Pemiscot county, Missouri.

"L. L. Collins, prosecuting attorney, makes oath and says that the facts stated in the foregoing information are true according to his best knowledge, information and belief.                    L. L. COLLINS.

"Subscribed and sworn to before me this 22d day of June, A. D. 1904.

"As witness my official hand, name and signature and the style and seal of my office.

"(Seal.)                    · J. W. Green,

"Clerk Circuit Court.

"By Harvey E. Averill, D. C."

The facts as developed at the trial of this cause are substantially as follows:

Andy Baker testified that defendant, in the spring of 1904, at State Line, Pemiscot county, Missouri, built a house on purpose for a crap table and poker room, which was in the rear end thereof. "He (defendant) got lumber, he says, to make a dancing floor and put him up a joint." Did not say what kind of a joint. I was in the place fifty times. It was just a house, two rooms, a partition, and a poker table in one end and a big crap table with a rim built about it and with cloth. Defendant run a crap table some time in April, 1904, at State Line, in Pemiscot county, Missouri. "I saw him there and 'cutting it.'" On cross-examination witness said: I did not say defendant run the crap table at State Line. I said a crap table was built there and Dave Locket was running the take-off; Dave Locket was the general boss; what he said generally went there; when the place was torn down defendant took the tent back to the saloon. When I saw defendant he was shooting craps; he took the nickel and put it in the take-off box; big game about the table; this was in April, 1904. Have seen defendant there dozens of times shooting craps. Defendant told me he bought the lumber to build the crap table; I do not know positively who that table belongs to. Both tables were in Pemiscot county. It was fixed for gambling purposes; have seen defendant with the money box carrying it about. When defendant was around, there was no one else around assuming the place of proprietor or boss. When he was away, negroes ran the tables.

Sam Cooney testified: Saw defendant carrying a little money box about; a take-off box; he would take it over to this gambling house mornings and evenings; have heard defendant speak about "his game."

Lon F. Johnson testified: Saw defendant running crap game at State Line in January, 1904; defendant was calling the game, saying what men would shoot; defendant put the take-off in the box; I heard defendant say when he bought the tent that he was to run a crap game; have seen him invite men to play.

J. A. Franklin testified: Am sheriff and arrested defendant; walked into State Line saloon and defendant came in with a couple of little boxes with a slot in the top; defendant told me "they all played" there, when I told him the charge against him.

Thomas J. Green, jailor, testified: Defendant told me he had been running a gambling device at State Line; defendant said there were two other men ahead of him and he never opened the boxes at all.

Dave Locket, defendant, testified: There was a gambling house at State Line; never run a gaming table there at the Line; I was running it once or twice down at the switch. The box was there on the table and the game started; nobody else being there, I put the nickles in the box; I could not get in the box; Ike Sharp tended to the box; that table belonged to all of them at State Line; all that came in there and gambled on it. The old tent, where the table was, was mine; but I did not put the crap table there. I ran the crap game at State Line, in this county, "along last spring, January, this year." I did not care much when Ike and Ed Topsy put the table in my tent.

At the close of the evidence, the court instructed the jury, and the cause being submitted they returned a verdict of guilty and assessed defendant's punishment at imprisonment in the penitentiary for the period of two years. Judgment was rendered in accordance with the verdict and from this judgment defendant

in due time and form prosecuted his appeal to this court and the record is now before us for consideration.

OPINION.

The errors complained of by appellant in this cause are thus briefly stated in the brief before us:

"The table and gambling device, to-wit, 'a pair of dice,' is not a gambling device under section 2194, Revised Statutes 1899. The table should be designed, adapted and devised for the purpose of playing a game of chance, such as is named in section 2194, Revised Statutes 1899.

"Crap tables are not named in said section 2194, Revised Statutes 1899, because the game of 'craps' is, and can be, played without the intervention of a table; craps can be played without the means of a table; the table is only a convenience. Craps are played with the dice and a table is unnecessary.

"Section 2194, Revised Statutes 1899, has reference to games that cannot be played without the assistance of a table; that is to say, the table constitutes and is a necessary appliance before the game can be played; the game cannot be played without the assistance of the table, and the table constitutes a necessary part of the device.

"An ordinary table, such as was described by the evidence in this case, upon which a game of craps can be played, by means of a pair of dice, is not within the prohibition of section 2194, Revised Statutes 1899."

While learned counsel for appellant states the points upon which he relies for the reversal of this judgment in different forms, it is apparent that the disputed legal proposition is embraced within the narrow bounds of the question, whether or not a "crap table" is such a gambling device as is contemplated by section 2194, Revised Statutes 1899. This section provides: "Every person who shall set up or keep any

table or gambling device commonly called A B C, faro bank, E O, roulette, equality, keno or any kind of gambling table or gambling device, adapted, devised and designed for the purpose of playing any game of chance for money or property, and shall induce, entice or permit any person to bet or play at or upon any such gaming table or gambling device, or at or upon any game played or by means of such table or gambling device, or on the side or against the keeper thereof, shall, on conviction, be adjudged guilty of a felony," etc.

This prosecution is predicated upon the provisions of that statute, and the solution of the proposition so ably and earnestly presented by counsel for appellant, must be sought in the proper application of the recognized rules of statutory construction.

The construction of this statute, the nature and character of gambling devices included within its provisions, were sharply presented in State v. Rosenblatt, 185 Mo. 114. This court, responding to the contention of counsel in that case, in discussing the provisions of section 2194, supra, said, GANTT, J., speaking for the court: "The statute is broad enough to and does include the setting up or keeping 'any kind of gambling table or gambling device adapted, devised or designed for the purpose of playing any game of chance for money or property,' and this indictment specifically charges that the defendant did set up and keep one crap table, commonly so called, upon which dice are used, and one chuck-a-luck table, commonly so called, upon which are used dice, 'which said gaming table and gambling device were adapted, devised and designed for the purpose of playing games of chance for money and property,' etc. 'Chuck-a-luck' and 'craps' are not named and therefore do not have a legal signification within the meaning of the statute, but if prohibited at all must come within the general prohibition of the section. Conceding that all other gambling tables and

devices not specifically named must, under the doctrine *ejusdem generis,* be of the same general class with those devices specifically named, we think there can be no doubt that a chuck-a-luck table and crap table are of that class. It was so ruled of 'keno' under a statute of Arkansas substantially in the words of section 2194. [Gould's Dig. of Arkansas, sec. 1, art, 3, chap. 51, p 369; Portis v. State, 27 Ark. 360; Trimble v. State, 27 Ark. 355.] Also of 'Pico.' [Euper v. State, 35 Ark. 629.] In Bell v. State, 32 Tex. Crim. Rep. 187, a crap table was held to be a gambling device within the statute of that State against keeping or exhibiting, for the purpose of gambling, a gaming table or bank. A like ruling was made as to a 'nickel-in-the-slot' machine by the Supreme Court of Georgia in Kolshorn v. State, 97 Ga. 343. [See, also, Mims v. State, 88 Ga. 458.]''

We see no reason for departing from the conclusions reached in that case, and it must be treated as decisive of this proposition.

It is next insisted that the information is vague and uncertain, and fails to charge any criminal offense under the laws of this State. Upon this contention it will suffice to say that a careful examination of the information in this cause discloses that it is in substantially the same form as the indictment approved in the Rosenblatt case, and following that case this contention must be ruled adversely to appellant.

It can serve no useful purpose to burden this opinion with a reproduction of the instructions given in this cause. We have given them careful consideration, and find that they require the jury to find every essential element of the offense charged and fairly and fully cover every feature of the case to which the testimony was applicable.

We have read in detail the testimony disclosed by the record. It fully supports the finding of the jury and we are unwilling to usurp their province and retry

the case upon the disclosure of the evidence from the record.

Finding no reversible error in the record before us, the judgment should be affirmed, and it is so ordered.

*Gantt, J.,* concurs; *Burgess, P. J.,* absent.