## THE STATE v. JOHN LEE, Appellant.

### Division Two, March 13, 1924.

1. **INFORMATION: Necessary Averments: Conclusion.** An information must charge a crime as fully and explicitly as an indictment is required to do, and an information for murder must allege with accuracy and completeness the specific facts constituting the crime,

State v. Lee.

and then conclude with a vigorous statement setting forth in general terms all the elements of the crime, so as to distinguish murder in the first degree, murder in the second degree, and manslaughter; but it is not necessary that the conclusion state that it is "upon the oath" or "upon the official oath" of the prosecuting attorney.

2. ———: ———: **Upon Oath: In the Conclusion: Waiver.** A statement in the body of an information that it is upon the official oath of the prosecuting attorney, if necessary at all, serves exactly the same purpose that the statutory oath serves; it apprises defendant that the crime charged to him is presented upon proper authority—that the charge is properly vouched for—and an averment at its conclusion that it is upon oath, like the statutory oath, is for his benefit, but it is no part of the substantial averment setting forth the charge. And where the information is verified by the oath of the prosecuting attorney, or some witness, as the statute requires, the omission in the conclusion of an averment that it is presented "upon the oath," or "upon the official oath," of the prosecutor, is not a fatal defect; for the omission of such an averment, being for his benefit, may be waived, and is waived by defendant's failure to object to the omission in the trial court, by motion to quash or other method of attack.

3. ———: **Technical Error: Appellate Practice.** If substantial technical error occurs in the trial of a defendant, and is not waived, the appellate court does not discharge him, upon his appeal, but remands the case for a new trial.

4. ———: **Conclusion: At Common Law.** After the amendment to the Constitution of 1900 permitting prosecutions for felonies by indictment or information, and prior to the enactment of the Act of 1909 (Sec. 3849, R. S. 1919), the information was required to be in the common-law form, and the offense charged by it was required to be as fully and completely set out as was required in an indictment, for the amendment was self-enforcing, and the information it called for, without an enabling statute, was the common-law information. But the common-law information did not require a conclusion, as did an indictment, nor did said statute require that a conclusion be added to an information charging a felony.

5. ———: ———: **Verification.** Under the Act of 1901 (Sec. 3849, R. S. 1919) a conclusion is no necessary part of an information charging a felony; but statutory verification is necessary. Said statute made it unnecessary that such an information follow any common-law rule in reference to form; it did not require the information to contain a conclusion; but it does require that the information be verified, and the verification required is not the

common-law verification, but the one designated by the statute, and the statutory verification may be by one of three methods: (a) by the oath of the prosecuting attorney, or (b) by the oath of a competent witness, or (c) the information may be supported by the affidavit of a competent witness, filed with it. Without such verification the information will not support a conviction, whether or not it contains a formal conclusion; but if verified in any one of the three methods, it is not insufficient simply because it contains no conclusion.

6. ———: ———: **Upon Official Oath: Verification.** It is not necessary that it be alleged in the body of an information charging a felony, that it is presented upon the special oath of the prosecuting attorney, or upon the oath of a witness, because the assurance that it is presented upon proper authority appears in the verifying or supporting oath or affidavit, which is a distinct and separate act, required by the statute, which does not declare that the information must state that it is presented upon the special oath of the prosecutor, or upon the oath of a witness.

7. ———: ———: **In Murder Cases.** A formal conclusion is not a necessary part of an information charging murder. The statute (Sec. 3849, R. S. 1919) makes no such exception. It applies alike to all felonies; and it does not require that the conclusion contain a statement that the charge is made "upon the oath" or "upon the official oath" of the prosecutor.

8. **INSTRUCTION: Manslaughter: No Evidence.** Where all the evidence, except that of defendant, which relates solely to self-defense, shows a cold-blooded and unprovoked murder, no instruction on manslaughter is authorized or appropriate.

9. **DYING DECLARATION: Admissibility.** The declaration of deceased, taken and reduced to writing, and assented to by him two days after he was cut and a few hours before his death, after he had been told by a physician that there was no hope for him and he had stated he expected to die, was properly admitted in evidence as his dying declaration.

Headnotes 1: Indictment and Information, 31 C. J. secs. 157, 238; Homicide, 30 C. J. secs. 273, 314 (1926 Anno). Headnotes 2, 4, 5 and 6: Indictment and Information: 2, 31 C. J. sec. 531; 4, 31 C. J. secs. 157, 158 (1926 Anno); 5, 31 C. J. sec. 158 (1926 Anno), 162, 164, 168 (1926 Anno); 6, 31 C. J. sec. 158. Headnotes 7, 8 and 9: Homicide: 7, 30 C. J. sec. 134 (1926 Anno); 8, 30 C. J. sec. 659; 9, 30 C. J. sec. 493.

Appeal from Cole Circuit Court.—*Hon. Henry J. Westhues*, Judge.

AFFIRMED.

*Fenton E. Luckett* and *T. S. Mosby* for appellant.

(1)   The information is fatally defective because it fails to contain the special conclusion necessary in an indictment for murder.   22 Cyc. 278; 1 Wharton, Am. Cr. Law (6 Ed.) sec. 214.; State v. Coleman, 186 Mo. 151; State v. Atchley, 186 Mo. 197; State v. Dawson, 187 Mo. 60; State v. Minor, 193 Mo. 597; State v. Meyers, 99 Mo. 107; State v. Cook, 170 Mo. 210; State v. Sanders, 158 Mo. 610; State v. Lawhorn, 250 Mo. 293.   (2)   The court erred in failing to instruct on manslaughter, and in failing to sustain the motion for new trial which called attention to the failure to so instruct.   Sec. 4025, R. S. 1919; State v. Burrell, 252 S. W. 709; State v. Connor, 252 S. W. 713; State v. Conway, 241 Mo. 271; State v. Todd, 194 Mo. 396; State v. McKenzie, 177 Mo. 712; State v. Weakley, 178 Mo. 423; State v. Darling, 199 Mo. 170; 30 C. J. 335, and note 66, and pp. 396-7 and notes 23, 24 and 26.   (3)   The court erred in admitting in evidence the alleged dying declaration of deceased, because it did not appear that the deceased was, at the time of the statement, under the sense of immediate impending death.   The statement refutes itself as a dying declaration, because on its face, it shows that the mind of the deceased was upon the material things of life, and was not impressed with the certainty of approaching death.   It was made in the form of questions and answers, and was read to the jury as the testimony of the deceased, without the defendant having had the opportunity of a cross-examination.   It also allows the deceased to allege a motive for the homicide which this court, in State v. Minor, 193 Mo. 597, denounced as opinion evidence.   30 C. J. 263; State v. Colvin, 226 Mo. 446, 481; State v. Brown, 188 Mo. 460.

*Jesse W. Barrett,* Attorney-General, and *Geo. W. Crowder,* Assistant Attorney-General, for respondent.

(1)   The concluding clause of the information in this case is in the following language: "and so, that the said John Lee, him, the said Preston Young, in the manner and by the means aforesaid, feloniously willfully, deliberately, premeditatedly and with his malice aforethought, did kill and murder." Under former rulings of this court, if adhered to, said information appears to be invalid. State v. Minor, 193 Mo. 597; State v. Coleman, 186 Mo. 151, 166; State v. Meyers, 99 Mo. 107. (2)   It is not necessary that the declarant in a dying declaration state in specific terms that he does not expect to recover. State v. Barnes, 204 S. W. 264. (a)   It is immaterial in what form a dying declaration is made or who prepares it, or whether it is in the exact words of the declarant, if it is read over to the declarant before he signs it and he understands it and assents thereto. State v. Hostetter, 222 S. W. 750. (b)   In determining the state of declarant's mind, as to whether he was under the sense of impending death, his evident dangerous condition, the opinions of medical attendants stated to him, and the declarant's own conduct and expressions may all be resorted to. State v. Colvin, 226 Mo. 482; State v. Lewis, 260 Mo. 420. (c) ˙ The deceased's realization of immediate and impending death, and his hopelessness of recovery, was sufficiently shown to make the dying declaration admissible. State v. Lowell, 235 Mo. 345, 351. (3)   There was no testimony justifying an instruction on manslaughter. No reasonable provocation was shown. Wharton on Homicide (3 Ed.) sec. 172; State v. Stewart, 278 Mo. 177; State v. Conley, 255 Mo. 198.

WHITE, J.—On trial before a jury, March 6, 1923, the defendant was found guilty of murder in the first degree in killing Preston Young, and his punishment assessed at death.

At the time of the alleged offense, October 10, 1922, John Lee, 26 years old, was an inmate of the penitentiary at Jefferson City, occupying a cell with three other convicts, one of whom was Preston Young. The testi-

mony of defendant's other cellmates was that they were awakened in the night by the outcries of Preston Young. He was exclaiming: "He is killing me, murdering me, cutting me to death!" They saw Lee striking at Young with a knife which afterwards he threw out of the window. Later the knife was picked up on the outside and identified by his cellmates.

A *post-mortem* upon Young's body showed that he received two knife wounds, either one of which would have produced death. On October 12th, two days after he was cut and six or seven hours before his death, Young made a written dying statement which was introduced in evidence. It corroborated the testimony of the witnesses to the effect that Lee attacked Young in the night, inflicting the knife wounds. J. L. Hoover, assistant yard master at the penitentiary, testified that he was present at the time the statement was made; that Young was told he was mortally wounded and realized he was about to die. Young asked the doctor if there was any chance for him and the doctor told him he thought not; Young then said he was going to die. This was testified to by another witness.

On this evidence the jury found the defendant guilty as stated. Judgment accordingly. Defendant appealed.

I. It is claimed by appellant that the information is fatally defective, because the conclusion does not say that the information is presented upon oath, or the official oath, of the prosecutor.

*Information.*

An information must charge a crime as fully and explicitly as an indictment is required to do. A common-law indictment for murder must allege with accuracy and completeness the specific facts constituting the crime, and then conclude with a vigorous statement setting forth in general terms all the elements of the crime so as to distinguish murder in the first degree, murder in the second degree, and manslaughter. This is not only a conclusion of the instrument, but a conclusion of law; in general

terms it characterizes the crime as warranted by the facts before set forth.

In this case there is no complaint that the information does not fully state the facts constituting the crime, concluding in due form exactly as required of an indictment, except that it omits the words "on his oath," or "on his official oath," though those words appear in the first part of the information. At common law an information did not have to be upon a specific oath, but it was presumed to be upon the official oath of the prosecutor. [14 R. C. L. 170; 22 Cyc. 281-282.] The oath he took when he was sworn into office was the only oath required, and it was not necessary to allege that the information was presented upon oath. This will be noticed more fully below. But, for the purpose of this point, assuming that it was necessary to state in the body of the information that it was upon the oath of the prosecutor, what office does that allegation perform? Since our statute was enacted in 1901, now Section 3849, an information is required to be verified by the oath of the prosecutor, or some witness. That was done in this case. The statement that it was upon the official oath of the prosecutor, if necessary at all, serves exactly the same purpose in an information that the statutory oath serves; it apprises the defendant that the crime charged to him was presented upon proper authority—the charge properly vouched for.

The cases discussing that subject treat that statement in the body of the information as performing the same office as the statutory verification. [State v. Pruett, 61 Mo. App. l. c. 158-159, a case later approved by this court; State v. Webster, 206 Mo. l. c. 570; State v. Bonner, 178 Mo. 431; State v. Brown, 181 Mo. l. c. 227 et seq.] The Brown Case was a murder case.

That being the case, the averment at the conclusion that the information was upon oath, like the statutory verification, was for the benefit of the defendant. It was no part of the substantial averment setting forth the charge. Being for his benefit he could waive it by fail-

State v. Lee.

ing to object to it by motion to quash, or other method of attack, in the trial court, where it could have been amended to meet the formal objection. Such is the universal rule on that subject. [State v. Jordan, 285 Mo. l. c. 68; State v. Temple, 194 Mo. l. c. 241; State v. Majors, 237 S. W. l. c. 488; State v. Brown, 181 Mo. 192, l. c. 231; and see note to Ex parte Talley, 31 L. R. A. (N. S.) 805 et seq.] See, also, Week v. United States, reported 1915B, L. R. A. l. c. 656, where the Missouri cases upon the subject are collated.

Cases are cited which hold that the objection may be presented for the first time in this court, but they are in conflict with those last cited. The defendant in this case made no objection to the information before, at, or after the trial, and presented the point for the first time in this court. He therefore waived his right to object to the informality.

II. We could properly omit further consideration of the information but for an unusual turn taken by the briefs in this case, which makes it important that we examine the subject upon its merits. The arguments have aroused an apprehension that this court may "turn loose" a convicted criminal upon a technical error in the information, when in fact such a thing never occurs. All this court can do in such case is to order a new trial. If the defendant then is "turned loose" it is the jury which does it on the facts before it. That could not happen in this case because a country jury of normal citizens does not acquit a defendant whose crime is so cold-blooded and so well proved as the record shows in this case. There is some evidence of abnormality in the defendant which probably, in the minds of the jury, aggravated rather than mitigated his offense. The record does not show the length of the defendant's present term, but he testified without contradiction that he was "in" for burglary, that he had already served eleven years *and was committed when he was fourteen years old.* Doubtless there is some explana-

tion of that fact which does not appear in the present case, with which alone we have to do. The public safety would not be imperiled if the friendless man were given a chance before another jury to secure a life sentence instead of the death penalty.

In this connection it may be noted that the so-called rule invoked by the appellant is not a rule at all, but an exception a few times applied *only* in murder cases; in no case was the construction complained of approved by this court, except where a human life was at stake.

III. Formerly the Constitution required all prosecutions for felonies to be by indictment. The inconvenience and delays of that method caused an amendment to the Constitution, permitting such prosecutions by "indictment or information which shall be concurrent remedies." This amendment was adopted in November, 1900, and in 1901, the present statute in pursuance of it, Section 3849, Revised Statutes 1919, was passed.

*Information: Historical Development.*

So we have three periods in which different forms were required: (1) Before the Constitutional Amendment, (2) after the Constitutional Amendment and before the statute was enacted, and (3) after the statute. These periods must be kept in mind and the decisions upon the subject must be considered with a view to the several periods of which they treat. We pass to the consideration of the development of the law.

When the State of Missouri adopted the common law, along with its excellencies proven through ages of its evolution, it took the inconveniences and defects of the system, including the common-law system of pleadings with its artificialities and obscurities. In civil cases common-law forms of pleadings are replaced by statutory requirements. In crimes defined by statute the courts always have been liberal in approving forms of indictments which describe offenses, in substantially the terms of the statutes, thereby very much simplifying criminal pleadings.

A common-law indictment was not necessarily so involved, redundant and obscure as it is painted. It was made bad in practice. It was not framed for the purpose of apprising a defendant of the "nature and cause of the accusation," but so as to be proof against the attacks of opposing counsel. Often the pleader did not try to be clear, but to be *complete* in his statement. In order to be sure that nothing was left undone he would state the same proposition in as many different forms as he could think of, as a sort of multi-plated armor of defense, and then to make assurance doubly sure he would throw out a rhetorical smoke screen, enveloping the entire subject with a cloud of turgid phrases, so that the opposition would be unable to locate and attack the particular facts pleaded. The use of language to conceal thought is a strategic maneuver not wholly unknown even now in civil pleadings.

However, such practice was and is unnecessary in an indictment for murder, for of all crimes it is one of the easiest to charge in terms complete and at the same time clear. The courts have very little trouble with the substantial averments of such an indictment. The concluding statement of a common-law indictment for murder in first degree took this form:

"And so, the grand jurors aforesaid, upon their oath aforesaid, do say that the said John Doe, him the said Richard Roe, in the manner and by the means aforesaid, feloniously, unlawfully, deliberately, premediatedly, and with malice aforethought, did kill and murder,"—etc.

It was formal, sonorous, officially impressive, an indispensable part of the habiliments of the charge, often pronounced with awesome, orotund solemnity, when delivered to the jury. It performed the same office for an indictment that judicial robes performed for the judges, investing the subject with a dignity and impressiveness which the facts sometimes did not possess. It also performed a much more important office than that; besides pressing home the charge in general terms, it was an assurance to the defendant that the crime charged to him

was presented upon proper authority and duly authenticated. The grand jury had for its office not only to discover crime, but also to protect citizens from causeless prosecutions. Persons often were too ready to suspect and accuse others of crime. For that reason the bulky chaff of accusation was sifted in the grand jury search until the grain of a criminal charge was produced and its fertility vouched for. The authority for the charge was quite as indispensable as the charge itself.

Naturally an indictment could not be amended by the prosecutor; besides, at the time of the trial the authority which preferred it, the grand jury, usually would have ceased to exist. For the reason that indictments were so rigid, Section 12, Article II, of the Constitution was amended in 1900, so as to allow a prosecution for a felony or misdemeanor "by indictment or information which shall be concurrent remedies." After that and before the passage of a statute in pursuance of it, the amendment was held by the court to be self-enforcing, and since the common law prevailed an information should be in the common-law form. While the offense had to be charged as fully and completely as by indictment, the information was not required to have the conclusion of an indictment, and did not have to be verified at all, because it was under the oath of office of the prosecutor. It was his official act and required no specific oath nor allegation that it was upon oath. [14 R. C. L. 170; 22 Cyc. 281, 282; State v. Pohl, 170 Mo. 422, l. c. 428; State v. Parks, 165 Mo. 496, l. c. 499; State v. Kyle, 166 Mo. l. c. 293, 306; 1 Bishop's New Criminal Proc. pp. 107-108.]

The cases of State v. Parks, and State v. Kyle, arose during that second period. Both were *felony cases,* and in each the information, approved by Court en Banc, is set out in full. In the Kyle Case it was as follows (l. c. 293):

"In the Circuit Court of Moniteau County, Missouri, January Term, 1901.

"N. C. Hickcox, prosecuting attorney within and for the county of Moniteau in the State of Missouri, under

his oath of office, and upon his best knowledge, informa-
tion and belief, informs the court that Charles Kyle, on
the sixteenth day of November, 1900, at the County of
Moniteau and State of Missouri, in and upon one M. L.
Moad, unlawfully and feloniously did make an assault,
and fourteen dollars of the lawful money of the United
States of the value of fourteen dollars, the property of the
said M. L. Moad, from the person and against the will of
the said M. L. Moad, then and there by force and violence
to the person of the said M. L. Moad, feloniously did rob,
steal, take and carry away, against the peace and dignity
of the State.

          "N. C. Hickcox, Prosecuting Attorney."

That was the approved form of a common-law in-
formation charging a felony before the passage of the
statute requiring verification. No conclusion like that for
a common-law indictment appears. It starts out with the
statement that the prosecutor presents the charge "under
his oath of office," but that was not necessary by the com-
mon-law form. [1 Bishop's New Criminal Proc. 107-
108.] It may be argued that because an information at
common law could not be filed for a felony charge, but
only for misdemeanors, the common-law form for indict-
ment should apply to informations charging felony. The
cases last cited show this court did not so hold, but ap-
plied to felonies the common-law rule that an information
needed no concluding averment that it was upon the oath
of the prosecutor.

IV.  The State was without a statute providing a
     form for informations until March, 1901,
**Information:** when an act went into effect which is now
**Statutory**
**Requirements.** Section 3849, Revised Statutes 1919, as
     follows:

"Sec. 3849. *Informations.*—Informations may be
filed by the prosecuting attorney as informant during
term time, or with the clerk in vacation, of the court hav-
ing jurisdicton of the offense specified therein. All in-
formations shall be signed by the prosecuting attorney

303 Mo. Sup.—17.

and be verified by his oath or by the oath of some person competent to testify as a witness in the case, or be supported by the affidavit of such person, which shall be filed with the information; the verification by the prosecuting attorney may be upon information and belief. The names of the witnesses for the prosecution must be indorsed on the information, in like manner and subject to the same restrictions as required in case of indictments.''

That statute made it necessary to verify an information; not a common-law verification, but a statutory one. It would not have to follow any common-law rule in respect to the mere formal parts.

In the first case which arose after the statute was passed (State v. Bonner, 178 Mo. 424, l. c. 431), this court construed the statute thus:

''When our General Assembly took this subject in hand and *directed the form of prosecutions by information, the common law on this subject no longer obtained.* It was the obvious purpose of the Legislature, in view of the amendment to the Constitution, *to revise the whole subject-matter of the prosecutions by information,* and to make Article 3 of Chapter 16, Revised Statutes 1899, *uniform in its operations as to all grades of crime,* and it must be held that the Acts of March 13, 1901 (Laws 1901, pp. 138-139), *operated to supersede the common law on the subject,* and that they were intended to prescribe *the only rules of procedure* which should govern such prosecutions.''

The act mentioned is now Section 3849, above set out. The italics ours.

The opinion was written by GANTT, J., the other judges of Division Two concurring. The information charging felonious embezzlement was in three counts, each count almost identical in form with the information in the Kyle Case set out above. It was not verified at all as the statute requires. The defendant for that reason filed a motion to quash, and the case was reversed and remanded because the trial court overruled the motion. The point was timely raised in the trial court. The signi-

ficance of the ruling is that it was in keeping with reasons quoted above. The common law relating to informations was *repealed* and the *statute must be complied with*.

It was followed by State v. Brown, 181 Mo. 192, a murder case, where Fox, J., speaking for Division Two, quoted and approved the rulings in the Kyle Case and in the Bonner Case, applying them to the murder case, l. c. 224-232, stating the purpose of the statutory verification of an information, as follows, l. c. 232:

"Its purpose was to afford the defendant a guaranty of the good faith of the prosecution and to prevent a careless and reckless prosecution of a citizen."

That is exactly the reason advanced for requiring an indictment to allege that it is presented upon oaths of the grand jurors. The Bonner Case has been cited with approval in many later cases. [State v. Jordan, 285 Mo. 68; State v. Anderson, 252 Mo. l. c. 95; State v. Zehnder, 182 Mo. App. 165.] The doctrine announced as above quoted, has never been disapproved or criticised.

The information in this case is presented by the prosecuting attorney, "upon his oath of office," and "upon his information and belief," and concludes as follows:

"And so that the said John Lee him the said Preston Young in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly and with his malice aforethought, did kill and murder against the peace and dignity of the State."

It is signed by H. J. Westhues, Prosecuting Attorney of County of Cole, and his oath, on information and belief, is endorsed in due form upon it. The conclusion has all that the Constitution requires for an indictment, and all that the Common Law form of indictment demands except that it does not say it is upon oath. It omits only what the statute, as construed in the Bonner Case and the Brown Case, says may be omitted and supplied by the separate oath of the prosecutor, as was done.

Keeping in mind Judge GANTT's language in the Bonner Case: "It was the obvious purpose of the Legislature . . . to revise the *whole subject-matter* of the

prosecutions by information, and to make Article 3, of Chapter 16, Revised Statutes 1899, *uniform in its operation* as to all grades of crime," we may examine more closely the statute. It provides three methods of authenticating the information:

(a) It may be *"verified"* by the "oath" of the prosecuting attorney; .

(b) It may be *"verified"* by "oath" of a competent witness;

(c) It may be *"supported"* by the *"affidavit"* of a competent witness, to be filed with the information.

Either of these methods is sufficient. It is not necessary to allege in the conclusion of the information that it is upon the oath of the prosecutor, because as at common law that is presumed. (See cases cited above under III).

Nor is it necessary to allege in the body of the information that it is presented upon his special oath, or the oath of a witness, because the assurance that it is presented upon proper authority appears in the verifying or supporting oath or affidavit, a separate and distinct act. [State v. Brown, supra.]

In State v. Webster, 206 Mo. l. c. 570, this was said: "It is true that the prosecuting attorney did not allege in the information that it was made upon his oath of office, but that did not invalidate the information." That was a misdemeanor case, but the statute makes no distinction between felonies and misdemeanors, in matters of form. The statute applies "to all grades of crime."

Notice the use of the language, "verified" by "oath" in (a) and (b), and "supported" by "affidavit" in (c). In (a) and (b) the prosecutor or the witness swears that the facts stated in the information are true. That verification takes place *after* the information is drawn; the prosecutor need not know when he draws it who will swear to it, and of course in that case cannot allege in the body of it upon whose oath it is presented.

In the third case (c) the "affidavit" which *"supports"* the information is a separate instrument "filed *with* the information." It may be filed at any time

prior to the filing of the information (State v. Lawhorn, 250 Mo. 1. c. 304), and before the information founded upon it is framed.

It was well said in the case of State v. Adkins, 284 Mo. 1. c. 694, the fundamentals of the Constitution should not be outweighed by forms. The spirit and purpose of amended Section 12, Article 2, of the Constitution, the plain legislative intention in enacting Section 3849, Revised Statutes 1919, as interpreted by this court in the Bonner Case, was to replace the formal requirements of a common-law indictment, with a common sense form of information and to make the charge apply to *"all grades of crime."*

As indicating a legislative intention to change entirely the form of the information, the statute concludes with a requirement that the names of witnesses shall be indorsed on the information as required in case of indictments. This specific retention of that requirement shows that other formal requirements for indictments were not intended to be retained.

Besides the cases cited above, the reports show many felony cases where the informations are set out in full and held good though the conclusion required of an indictment is lacking. Some of them are State v. Locket, 188 Mo. 415, 1. c. 418; State v. Sharpless, 212 Mo. 1. c. 182-184; State v. Anderson, 252 Mo. 1. c. 87-88; State v. Lawhorn, 250 Mo. 1. c. 296. In the Lawhorn Case the information was held bad for want of the statutory affidavit; otherwise, it was sufficient.

It is claimed here that an information charging **In Murder** murder should contain the formal conclusion **Cases.** of indictment merely and only because it charges murder.

In the case of State v. Anderson, the defendant was charged with assault with intent to kill. The information is set out in full at pages 87-88; it contains no formal conclusion except the constitutional requirement "against the peace and dignity of the State." It was signed and sworn to by the prosecuting attorney, and his

oath indorsed upon the information as in this case. It was held to be good. An assault with intent to kill possesses all the elements of murder except the result. It may be, and is, described in exactly the same language, with the exception of a few words characterizing the grade of the crime and the effect of the criminal act. Why should a form of authentication be required in the one case and not in the other? In the Lawhorn Case the charge was rape; as serious in its consequences to the defendant as murder in the second degree, and the common-law conclusion of the indictment was not required. All the cases cited by the defendant in support of his position are cases where the defendant was convicted of murder in the second degree, though charged with murder in the first degree; they will be noticed below.

To say that a charge of murder in an information requires a different verification or authentication, not provided for in the Constitution or statute, from those required for some other felony, is to say the Legislature is powerless to repeal the common law. The exposition of the law in the Bonner Case and in the Brown Case, as set out above, should control here. A black horse case is not necessary in order to establish a precedent. It is identity of principle, not similarity of facts, which furnishes authoritative precedent.

It is a maxim that when the reason for a rule of law ceases the rule ceases. The reason for the formal common law concluding authentication in the body of an information fails, and hence the rule requiring it fails. That is fully recognized by the courts as to all felonies except murder. The reason for a distinction in a murder case does not exist; no reason appears in the terms of the statute, in its purpose, nor in its effect.

The cases cited in support of the appellant's position must be noticed. Three of them, State v. Meyers, 99 Mo. 107; State v. Cook, 170 Mo. 210, and State v. Sanders, 158 Mo. 610, are cases where indictments were under consideration and of course are not in point. State v. Lawhorn, 250 Mo. 293, is cited; it has been

State v. Lee.

noted above, and is not in point for appellant. Four cases, however, are in point: State v. Coleman, 186 Mo. 157; State v. Atchley, 186 Mo. 1. c. 197; State v. Dawson, 187 Mo. 60; State v. Minor, 193 Mo. 597. All those cases occurred near the same time and in each one of them the construction of the statute in State v. Bonner, and State v. Brown, was ignored. Those four cases have not been followed, while the Bonner and Brown cases have been.

GANTT, J., in a strong dissenting opinion in the case of State v. Coleman, points out that the requirement in an indictment that it shall be averred to be on the oaths of the *grand jurors* is very different from any similar allegation in an information presented upon the official oath of the prosecuting attorney; that in the latter, the allegation is no part of the facts constituting the offense, either specifically or in general. That dissenting opinion is much better reasoned and shows a much greater research of the authorities than any of the majority opinions in those cases. In the last case (State v. Minor, 193 Mo. 607), written by VALLIANT, J., this reason is given for requiring an allegation that the information is upon oath:

"Charging the crime in the information on the oath of the prosecuting attorney does not mean that the prosecuting attorney is speaking of his own knowledge any more than do the grand jurors when they on their oath charge the crime in an indictment, but it means with the prosecuting attorney what it means with the grand jury; that is, that he has diligently inquired and faithfully considered the evidence that has come to him and as the result of his investigation is so satisfied as to the truth of the charge that he is willing to say on his oath, in the same sense that the grand jurors say on their oath, that the accused committed the crime specified."

That is exactly the office and purpose of the statutory affidavit as explained in the Bonner Case and in all the authorities upon the subject; the allegation is

entirely superfluous. So far as I can find, in no other state which has a statute similar to ours is such an allegation required. The text-books cite Missouri alone as holding to the doctrine contended for. In the Coleman Case this is pointed out by GANTT, J., who made a similar investigation (186 Mo. l. c. 172). In that respect there is no reason or authority for the distinction between murders and other felonies.

Further the Statute of Jeofails, Section 3908, Revised Statutes 1919, says that no indictment or information shall be deemed invalid "for the want of the averment of any matter not necessary to be proved." It cannot for a moment be contended that it is necessary to prove that the prosecuting attorney performs his duties, including the presentment of an information upon his oath of office; no one ever heard of a criminal trial in which such proof was offered or required.

No doubt some rulings have been influenced by a habit of mind in judges educated and long trained in common-law procedure and familiar with forms which at one time were wholly indispensable. In the present day fever for "direct action," when "hello!" is the most elaborate form of polite address, it is difficult to appreciate how in the elder day ceremony was the essence of social and official life. Not only executives but courts of justice could not function without elaborate ceremonial. Form was so essential that it could not be distinguished from substance, just as in the philosophy of matter "the thing itself" cannot be separated from its attributes. The form of the law was the law.

Progress in procedure has been made, not by the abolition, but in the simplification and adaptation of forms. Certain forms of procedure became so fixed in practice, and acquired so definite a significance, that a practitioner was always on safe ground when he followed them. To break away from them at once and entirely was to be left without a compass or a guide, the sport of judicial whims. We cannot abolish forms any

more than we can abolish principles; you cannot retain a triangle if you erase its three lines. The form of a criminal charge is the substance of the charge; the charge may be expressed adequately or insufficiently, or the attempt may not state the offense at all.

We have stated this as strongly as we could because now no reason exists for the so-called rule contended for. There may be sufficient reason for requiring an information for murder to charge the crime as fully and completely as is required in an indictment, and to include the concluding general statement which characterizes the grade of the crime. But the averment in such conclusion that it is upon the official oath of the prosecutor has no reason for its presence, either in the common-law form for informations, or in the necessities of the case; on the contrary the statute, as construed in the Bonner Case, plainly supplies a different method of serving the same purpose.

We hold, therefore, that the statutory verification is intended to apprise the defendant that he is charged upon proper authority, that the verification of an information supplants the common-law requirement that an *indictment* allege in the body of it that it is upon the oath of the grand jurors; that the statute does not in terms, nor by its relation to any common-law rule, tolerate any difference in respect to that mere formal requirement between a charge of murder and a charge of some other felony.

IV.   Error is assigned to the failure of the court to instruct on manslaughter. There was no evidence whatever upon which to base an instruction upon manslaughter. All of the evidence, excepting that of the defendant himself, shows that murder, cold-blooded and unprovoked, was accomplished. The defendant himself did not testify to facts which would justify the instruction on manslaughter. He testified that Young attacked him with a knife and that he got the knife away from him in the scuffle and didn't know that he was cutting him.

On his statement an instruction on self-defense was necessary and was given; if what he said was true he struck solely in self-defense, and without any intention to kill—then there was no manslaughter.

V.   Error is assigned to the admission of the dying declaration of Young.   This declaration was taken and reduced to writing, assented to by him two days after he was cut, and a few hours before his death.   He was informed that he could not live, and stated that he expected to die.   This was entirely sufficient to make it admissible.

Other alleged errors are mentioned but we do not deem them sufficiently important to merit further consideration.   Accordingly the judgment is affirmed. *Walker, J.*, concurs; *David E. Blair, P. J.*, concurs in result.