THE STATE v. BONNER, Appellant.

Division Two, December 9, 1903.

1. **Felonies:** INFORMATIONS: AFFIDAVIT NECESSARY. The statute of 1901 suspended the common-law information for the prosecution of felonies, and substituted in lieu thereof the statutory information, which must be supported by affidavit, and since that statute went into force all informations, whether in felony or misdemeanor cases, must be supported by affidavit, either of the prosecuting attorney or of some witness competent to testify in the case.

2. ————: INSTRUCTIONS: ASSUMPTION OF FACT. An instruction should not draw into the case a fact which there is no evidence to support. Nor should it assume as established a controverted fact.

Appeal from Cole Circuit Court.—*Hon. Jas. E. Hazell,* Judge.

REVERSED AND REMANDED.

*J. G. Slate* with *Edmund Burke* for appellant.

(1)    (a) The circuit court erred in overruling motion to quash the information for the reason it is not signed by the prosecuting attorney as required by law. Secs. 2477, 2478, 2513, R. S. 1899; Laws 1901, p. 132; State v. Kyle, 166 Mo. 306; State v. Hoffman, 75 Mo. App. 380, syll. 2; State v. Wade, 147 Mo. 77.    (b) Because said first count of said information is not verified by the oath of the prosecuting attorney, nor by the oath of some person competent to testify as a wit-

ness; nor is it supported by the affidavit of such person, filed with the information. Secs. 2477, 2478, 2513, R. S. 1899; Laws 1901, p. 139; State v. Hoffman, supra; State v. Kyle, supra; State v. Wade, supra. (2) Defendant's motion to set aside the verdict of the jury should have been sustained. (a) It was the duty of the circuit court to give all necessary instructions to the jury bearing on the case, whether asked to do so or not, and a failure to do so constituted error. State v. Palmer, 88 Mo. 573. (b) Defendant testified that the amount of commission to which he was entitled on account of the machine traded for the horse, referred to in the various counts of the information, constituted a portion of the consideration given for the horse, and it was the duty of the circuit court to instruct the jury accordingly. In this case none was given on that point and the failure to do so constituted error. State v. Palmer, supra. (3) (a) The third instruction is erroneous. It tells the jury that a bailee, in the present case, is a person who hires a horse. There is not a scintilla of evidence in this record that the defendant hired the horse referred to in any of the counts of the information. And such a pretense is purely imaginary. (b) The third instruction is erroneous in another particular. It tells the jury that George Porth was the owner of the horse and wagon mentioned in the first count of the information.

*Edward C. Crow*, Attorney-General, and *C. D. Corum* for the State.

(1) Defendant filed a motion to quash the information and as a reason therefor urged that the motion should be sustained, because the information was not verified by the prosecuting attorney. Since the amendment of section 12, article 2 of the Constitution, adopted at the general election held on November 8, 1900, felonies may be prosecuted upon information filed by the

prosecuting officials. We have no statutory law describing the mode of procedure by information, and must pursue the course of the common law. The common-law information is an accusation against a person exhibited by the Attorney-General, or the Solicitor-General, and was under his oath of office. The motion in this case was filed November 7, 1902, and was filed "upon the oath of office" of the prosecuting attorney. It was, therefore, filed under the official oath of the prosecutor, and that is all that the law now requires. State v. Kyle, 166 Mo. 287; State v. Pohl, 170 Mo. 422; State v. Vinso, 171 Mo. 576; 1 Bishop's New Criminal Procedure, sec. 141. (2) The court did not admit any improper or irrelevant evidence on the part of the State over the objection of the defendant, nor did it exclude any competent evidence which was offered by the defendant. (3) The points raised in the motion for a new trial, in reference to the failure of the court to instruct on all the law, can not be considered. No exception was taken at the time of the failure of the court to instruct on all the law in the case. This was necessary. State v. Cantlin, 118 Mo. 100; State v. Vinso, 171 Mo. 576. (4) The third instruction is criticised in that it tells the jury that a bailee in the present case is a person who hires a horse, etc., and it alleged that there is no evidence tending to show that the defendant hired the horse mentioned in the evidence. We can not agree with counsel on this proposition, and the evidence tends very strongly to convince us that it was the mutual understanding between prosecuting witness and the defendant that the prosecuting witness was to furnish the horse as a part of the consideration for the defendant's services in selling machines. It seems to have been the agreement that the defendant was to receive the use of the horse and also a commission for his services. It is clear to our mind that the defendant did hire the horse from the prosecuting witness, within the meaning of that instruction. Nor can the criticism of defendant

that the instruction assumes that the prosecuting witness was the owner of the horse and wagon, be entertained. The instruction closed with the phrase that the jury must believe from the evidence "that the property belonged to and was owned by the said George Porth."

GANTT, P. J.—This is an appeal from a judgment of conviction in the circuit court of Cole county. The defendant was prosecuted by information filed by the prosecuting attorney of said county, charging him with embezzlement and larceny in three separate counts. The said information is in the words following (omitting caption):

"Robert P. Stone, prosecuting attorney within and for the county of Cole and State of Missouri, upon his oath of office informs the court that William Bonner, on or about the 10th day of December, A. D. 1900, at the county of Cole and State aforesaid, became and was the bailee of a certain horse of the value of forty dollars and one wagon of the value of fifteen dollars—all of the value of fifty-five dollars—the personal property of George Porth, then and there being, which said horse and wagon was let and delivered to the said William Bonner as said bailee and being so the bailee thereof, the said William Bonner, the said horse and wagon, did then and there fraudulently and feloniously embezzle and convert to his own use. And so the said William Bonner, the said horse and wagon, in the manner and form aforesaid, feloniously did steal, take and carry away, against the peace and dignity of the State.

"And Robert P. Stone, prosecuting attorney aforesaid within and for the county of Cole and State of Missouri, upon his oath of office aforesaid, further informs the court that William Bonner on or about the 10th day of December, A. D. 1900, at the county of Cole and State of Missouri, being then and there the agent of a certain private person, to-wit, one George Porth, and

the said William Bonner then and there by virtue of his said employment as agent of the said George Porth had received and taken into his possession and under his care, one horse of the value of forty dollars and one wagon of the value of fifteen dollars—all of the value of fifty-five dollars — of the personal property belonging to the said George Porth, and the said horse and wagon, then and there feloniously did embezzle and fraudulently convert to his own use without the assent of his employer, the said George Porth, the owner of said property, and the said William Bonner, the said horse and wagon in manner and form aforesaid, feloniously did steal, take and carry away, against the peace and dignity of the State.

"And Robert P. Stone, prosecuting attorney aforesaid, upon his oath of office aforesaid, further informs the court that William Bonner, on or about the 10th day of December, A. D. 1900, at the county of Cole and State of Missouri, one horse of the value of forty dollars and one wagon of the value of fifteen dollars—all of the value of fifty-five dollars—of the goods, chattels and personal property of one George Porth, then and there being, feloniously did steal, take and carry away, against the peace and dignity of the State."

It will be noted there was no verification by the prosecuting attorney or any competent witness appended to the information.

On the 24th of November, 1902, the defendant filed his motion to quash the said several counts, which was by the court overruled and he duly excepted.

At the same term defendant was tried before a jury and convicted. The verdict was general and made no reference to a particular count. The evidence was conflicting. On the part of the State it tended to prove that the defendant was selling sewing machines for George Porth, a merchant of Jefferson City.

In order to further his business it was necessary

for defendant to have a horse and wagon adapted to the purpose.

All parties testified that the wagon was purchased from Walther.

Porth testified he paid for the wagon, and that it was his property. Walther and defendant testified that Walther sold it to defendant for nine or ten dollars, and Walther was to take and did get a watch valued at four or five dollars in part payment, and Porth was to stand good for the balance. Porth testified the watch was his property, and defendant testified that he bought the watch in Davenport, Iowa, and it belonged to him.

As to the horse the evidence discloses that defendant traded a sewing machine, variously estimated at $11.60 and $14, which belonged to Porth, and which defendant had in his possession to sell, for a horse belonging to one Stokes. Defendant testified that he reported the sale to Porth, and while the latter disapproved the trade at first, he finally consented to it.

Porth testified that Bonner reported the trade; that he took the horse at $40 and paid Bonner $10 commission on the sale, and took the horse as his own, permitting Bonner to use it. Bonner in the fall or winter of 1900 sold the horse and wagon to Grider for $30, and went to Arkansas for his wife's health. In 1902 he returned to Callaway county, and this prosecution was commenced.

I. The defendant moved to quash the indictment because the same was not verified, either by the oath of the prosecuting attorney, or by some person competent to testify as a witness in the case, nor is it based upon the affidavit of some private person filed with the clerk, as required by sections 2477 and 2478, Revised Statutes 1899, as amended by Laws 1901, pp. 138-139. The information is not verified in either mode, and the question presented is important.

By the amendment to the Constitution of Missouri, adopted by the people November 8, 1900, indictments and informations became concurrent methods for the prosecution of felonies.

Prior to that, felonies could only be prosecuted by indictments.

Soon after the adoption of the amendment, a question arose as to the time it went into effect, and whether it was self-enforcing without the aid of legislation.    In State v. Kyle, 166 Mo. 287, the Court in Banc held that the amendment took effect from the time of the canvass of the vote on the amendment by the Secretary of State, and that it was self-enforcing and operative from the date it took effect, to-wit, December 19, 1900.

In January, 1901, and prior to any legislation regulating the mode of proceeding by information in felony cases, the prosecuting attorney of Moniteau county filed his information against Kyle, charging him with robbery.

The information in that case was assailed because it was not verified by the prosecuting attorney and not sworn to by any private person competent to testify in the case, but it was held that in the absence of a statute prescribing the mode of procedure by information in the prosecution of felonies, and as information was used in the amendment in its common-law sense, resort must be had to the common law to determine its sufficiency, and it was held sufficient without verification or a supporting affidavit.    At the regular session of the General Assembly in 1901, and on the 13th day of March, 1901, the Legislature proceeded to adjust the statutes on the subject of prosecutions by information to the new order of things and accordingly article 3 of chapter 16, Revised Statutes 1899, was amended by inserting in section 2476 after the word "indictment" the words "or information," so as to make that section read: "All felonies

shall be prosecuted by indictment *or information* except,'' etc.

Section 2478 was also amended by striking out the word ''misdemeanor'' therein and inserting in lieu thereof the word ''crime.'' Thus amended it is obvious that the Revised Statutes of 1899, article 3 of chapter 16, provided a statutory method of prosecuting felonies by information and directing when and where they should be filed, and in section 2477 specifically required that informations should be verified by the oath of the prosecuting attorney or by the oath of some person competent to testify or be supported by affidavit of such person filed with the information.

So that while there was no statutory method of procedure provided when the Kyle case arose, and for that reason the common-law form of information was adjudged sufficient when this prosecution was commenced, there was a specific statutory provision governing this method of prosecution and one which no one will question the right of the Legislature to prescribe.

When our General Assembly took this subject in hand and directed the form of prosecutions by information, the common law on this subject no longer obtained. It was the obvious purpose of the Legislature, in view of the amendment to the Constitution, to revise the whole subject-matter of the prosecutions by information, and to make article 3 of chapter 16, Revised Statutes 1899, uniform in its operation as to all grades of crime, and it must be held that the Acts of March 13, 1901 (Laws 1901, pp. 138-139), operated to supersede the common law on the subject, and that they were intended to prescribe the only rules of procedure which should govern such prosecutions.

It then being plain that the information fails to conform to either of the three alternatives prescribed by the statute as to verification, the circuit court erred in not sustaining the motions to quash and in arrest of

judgment because the information was not verified as required by law.

The offense charged is one involving the liberty of the citizen and the courts are not at liberty to disregard the safeguards which the Legislature has deemed essential prerequisites to a prosecution for crime.

II.    The defendant also urges error in the giving of the third instruction in these words:

"The jury are instructed that a bailee *in the present case* is a person who *hires* a horse and either at the time of hiring or afterwards conceives a design of stealing him and actually converts him to his own use with the intent to convert to his own use, and the bailee in the present case is a person who is entrusted with the possession of a certain wagon and the horse mentioned in the testimony for the purpose of driving over the country selling sewing machines, and which personal property is to be returned to the owner when the agency for the sale of the sewing machine shall cease, if they shall believe from the evidence that the property was delivered to the defendant for that purpose, and that he was the agent of George Porth, *the owner thereof,* and that the property belonged to and was owned by the said George Porth, then the defendant is a bailee of said property."

The objection that there was not a scintilla of evidence tending to show a *hiring* of the horse alleged to have been embezzled is well taken.

We have gone carefully through the entire record, and there is no testimony of a hiring in it.

This instruction is also obnoxious to the charge that it virtually assumed that Porth was the owner of the horse and wagon, whereas his ownership was contested throughout the trial, and there was much evidence tending to show that the horse and wagon belonged to Bonner, though he was indebted to Porth for aiding him in purchasing them.   It was error to assume a controverted fact so vital to the interest of defendant.

Moreover, while probably not so intended, there is room for the contention that it practically advised the jury that the horse and wagon were Porth's property. The court properly instructed the jury to acquit of the larceny charged in the third count.

The other assignments need not be discussed. For the errors already indicated the judgment must be and is reversed and the cause remanded.

*Burgess* and *Fox, JJ.*, concur.