STATE of Missouri, Respondent,

v.

James HEMPHILL, Jr., Appellant.

No. 54773.

Supreme Court of Missouri,
Division No. 1.

Nov. 9, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 14, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Daniel P. Reardon, Jr., St. Louis, for appellant.

LAURANCE M. HYDE, Special Commissioner.

Defendant appealed from a judgment of conviction for second degree murder with sentence of 40 years' imprisonment.

Defendant's statement of facts, which the State adopts, is as follows: On January 19, 1968, defendant James Hemphill, Jr. was shooting pool in a pool hall at 718 Taylor Avenue in St. Louis, Missouri. While so engaged the deceased, James Smith; his brother, Lee Nalls; his uncle, Robert Haymore; and a friend, Anthony Williams, entered the pool hall. While Smith and Williams went to the rear of the hall and Haymore remained by the door, Nalls engaged defendant Hemphill in a conversation concerning a coat Nalls had allegedly stolen from Hemphill some days earlier. During the course of this conversation the deceased Smith advanced to the front of the pool hall where Nalls and Hemphill were talking and said something to the effect that if Hemphill had anything to take up with his brother he would also have to take it up with him. At that time Smith was restrained by Williams and escorted back to the rear of the hall, at which point he broke free of Williams' grip and once more advanced upon Hemphill, and when he was from 8 to 12 feet from Hemphill, Hemphill drew a pistol from his waistband and fired one shot at Smith, the bullet striking and entering his chest, severing an artery and part of the lung, causing James Smith to die. Smith fell to the floor and Hemphill fled the shooting scene. There is disputed testimony as to whether or not a knife was removed from Smith's body prior to the arrival of the police. Hemphill, a few hours later, surrendered himself to a Detective Searcy.

Defendant's first contention is that his prosecution was based on an indictment which was invalid because a member of the grand jury, Ethan A. H. Shepley, Jr., who was the foreman, was ineligible to serve because § 494.020(4) provides: "The following persons shall be ineligible to serve as a juror, either grand or petit * * * (4) Any licensed attorney at law."

This contention was first made in defendant's motion for new trial. The State cites §§ 540.060 and 540.070 and State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330, requiring challenge before a grand juror is sworn. In Richetti the defendant had been in custody nearly four months before the grand jury had been sworn and it was held he had ample time to proceed in accordance with the statute. See also § 494.050, stating: "No exception to a juror on account of his citizenship, non-residence, state or age or other legal disability shall be allowed after the jury is sworn." Although § 540.060 states only as grounds for challenge of a member of a grand jury "that he is the prosecutor or complainant" or "that he is a witness on the part of the prosecutor," Richetti recognized, 119 S.W.2d, l. c. 334, "a State cannot deprive a defendant of his constitutional right to equal protection under the law." Therefore, constitutional grounds may be timely raised, which has been considered to be before the trial begins.

This court cited the Scottsboro case, Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074, holding where through state action " 'all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of

a person of the African race, the equal protection of the laws is denied to him, contrary to the Fourteenth Amendment of the Constitution of the United States,'" 294 U.S. 589, 55 S.Ct., 1. c. 580. In that case, a motion to quash the indictment was made at the outset of the trial, as was also a motion to quash the trial venire. The Supreme Court held these motions should have been sustained and we recognized that this decision was the law of Missouri in State v. Logan, 341 Mo. 1164, 111 S.W. 2d 110, 113. However, the challenge to the jury (petit jury) in that case was made by a motion to quash the panel before the trial began.

■ Section 494.020(4) applies to both grand or petit jurors. In State v. Crawford, Mo.Sup., 416 S.W.2d 178, 191, the ineligibility of a petit juror, likewise the jury foreman, was first raised in the motion for new trial. This juror was a licensed attorney while residing in Kansas City but had lived in Laclede County, where the trial was held, for 20 years and had not engaged in the practice of law there. Neither counsel for the state nor for defendant or the trial judge knew this juror was a licensed attorney. This court held it could not find "defendant was prejudiced by the fact that an ineligible person was a member and foreman of the jury." This court quoted the applicable rule from State v. Hermann, Mo.Sup., 283 S.W.2d 617, 618, as follows: "'The policy of our law is that the qualification of a juror should be determined before the trial begins; that such qualification is a matter of exception; and that the parties must develop such information and take such exceptions, as they desire to preserve for appellate review, before the jury is sworn.'" (The court noted this rule would not apply to a petit juror who answered untruthfully on voir dire.) The situation as to Mr. Shepley was similar to that in Crawford. Shepley was Executive Vice President of the Boatmen's National Bank of St. Louis and, although licensed as an attorney in 1948, he had not practiced for over 15 years and was a banker by profession. Defendant's claim does not raise a constitutional ground and we hold his contention concerning grand juror Shepley came too late.

Defendant's second claim of error is that the prosecution was permitted to introduce evidence of defendant's other and unrelated criminal offenses requiring defendant to answer the following question: "Now, let me ask you this: Do you carry this .38 automatic all the time?"

Defendant says this would be evidence of an unrelated crime of carrying a concealed weapon. Defendant relies on State v. Houston, Mo.Sup., 292 S.W. 728, and also cites State v. Foley, 128 W.Va. 166, 35 S.E.2d 854; People v. Wright, 294 Mich. 20, 292 N.W. 539; People v. Matthews, 17 Mich.App. 48, 169 N.W.2d 138; State v. Summers, 118 W.Va. 118, 188 S.E. 873, 875. In State v. Houston, 292 S.W., 1. c. 730, we said: "Evidence simply tending to prove that the defendant at some former time or times carried a revolver concealed on his person would have been inadmissible as tending to prove another and distinct offense." However, in that case it was held relevant to show that previously the defendant "carried and exhibited a revolver and declared he intended to kill the deceased." The Michigan cases cited involved previous unrelated incidents. In West Virginia cases, Summers held an instruction that a defendant threatened with a murderous attack may arm himself should have been given; Foley held it improper to require defendant to testify he had no license to carry a pistol on the date of the killing because this related to a separate offense.

We consider the situation here to be different from that in those cases, although perhaps somewhat like that in Summers. The essence of defendant's objection was as follows:

"MR. BELL: If he carries it all the time, that would be evidence of a crime. Now, he has to confine it to these issues

as to whether or not he carried it six months before or two weeks before. The question is whether or not he had it at this particular time and whether or not that was the question for this jury to determine as to whether or not he carries it all the time. That is improper.

"THE COURT: You say it's a question for the jury to determine whether he carries it all the time?

■ "MR. BELL: No, I didn't say that. I said whether or not he carries it all the time would be evidence of a crime unrelated to this particular crime that he's charged with, which is inadmissible." However, defendant's answer to the question, as to whether he carried the pistol all the time, was "No," so that this testimony did not show facts that his counsel in his objection claimed inadmissible.

■ Defendant further testified without objection he began to carry the pistol "after I heard that they was looking for me to do something to me"; and that it was only that evening or the day before that he began to carry the pistol. The court permitted this testimony on the State's claim that it was admissible on the issue of premeditation, which was an essential issue on the first degree murder charge made against defendant. The State cites State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307, stating: " 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial.' The test of whether evidence of other distinct crimes falls within any of these exceptions has been aptly stated as follows: 'The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in

that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. * * *' " See also State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765; State v. Niehoff, Mo. Sup., 395 S.W.2d 174; State v. Smith, Mo. Sup., 431 S.W.2d 74; 22A C.J.S. Criminal Law §§ 686–687, pages 764–782. We hold defendant's testimony was competent on the issues of motive and intent and that it was not evidence which defendant's counsel claimed was inadmissible.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.