**STATE of Missouri, Respondent,**

v.

**Roy Earl RAND, Jr., Appellant.**

No. 34864.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 3, 1973.

Rehearing Denied May 11, 1973.

Application to Transfer Denied July 16, 1973.

Gerald R. Ortbals, M. J. Croghan, Jr., St. Louis, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty., James J. Barta, Henry J. Fredericks, Asst. Circuit Attys., St. Louis, for respondent.

PER CURIAM:

Defendant appealed from a judgment of conviction for second degree murder with sentence of 25 years imprisonment.

No point is raised on appeal regarding the sufficiency of the evidence to sustain the conviction. According to the defendant's statement of the facts, adopted by the State, defendant and his wife occupied a basement apartment in the residence of Beulah Aernouts, but were allowed free access to the entire house. On May 22, 1971, defendant and Arnold Wells and William Thomas, both of whom were friends of Mrs. Aernouts, were seated in her kitchen. Defendant refused a drink offered by Thomas, and the latter struck defendant, knocking him down. Wells separated the two. Both Thomas and Wells left the room and defendant was in the act of washing his face at the kitchen sink. Thomas reappeared and asked defendant to go outside and continue the fight with him. Defendant declined to do so, and while bent over the sink Thomas struck defendant on the head with a club, presumably the leg of a chair that had collapsed during the earlier scuffle. Thomas also body-punched defendant, and attempted to drag defendant across the kitchen floor towards the back door, but before they reached it defendant stabbed Thomas with a knife defendant had grabbed off the kitchen sink. Defendant's defense was that he acted in self-defense.

On appeal defendant maintains that the trial court erred in its rulings on certain evidentiary matters, in its response to a communication from the jury during its deliberations, and in overruling defendant's motions for a psychiatric examination. A review of the first ruling requires an additional statement. In his opening statement counsel for the defendant alluded to earlier events of the day when Wells had shown defendant a revolver and ". . . made certain statements in connection with that revolver that Roy Earl Rand knew were threats on his life . . ." Continuing, counsel asserted that the evidence would show that the defendant ". . . had a pathological fear of weapons . . ." Mrs. Dorothy Rand, defendant's wife, was called as a witness in his behalf and on di-

rect examination related that the defendant had been the victim of a robbery perpetrated with a sawed-off shotgun during the time he worked in a service station, and that since that time the defendant had relayed to her his fear of weapons. Defendant took the stand in his own defense, and on cross-examination was asked if his wife had been correct when she related that he was afraid of weapons. He replied that he was. Over the objection of the defendant he then admitted on cross-examination that in October, 1970, while living in a house in which a Doctor Grady Phillips maintained an office, defendant purchased a .45 caliber revolver which the Doctor took away from him while they were drinking, and that he took a .25 caliber pistol away from the Doctor later on the same day and fired it twice in the direction of the Doctor. He also admitted that he had obtained and fired the .45 caliber later. Dr. Phillips was called as a rebuttal witness by the State and without objection testified that defendant had shot him twice with the .25 caliber revolver.

The general rule is that evidence of prior crimes is inadmissible, except for certain purposes, two of which are those of showing motive and intent. State v. Holbert, 416 S.W.2d 129 (Mo.1967). From the very start of the trial defendant had voluntarily interjected his claimed abhorrence to and fear of weapons for the purpose of establishing his state of mind, in support of his plea of self-defense. Having chosen to interject his claim of fear he is in no position to complain of his cross-examination in refutation of his claim, State v. Duncan, 254 S.W.2d 628 (Mo.1953), even though evidence of the commission of a prior crime was incidentally developed. State v. Hemphill, 460 S.W.2d 648 (Mo.1970).

Defendant next asserts that the court erred in unduly restricting and limiting his cross-examination of certain of the State's witnesses. During defendant's cross-examination of Dr. Phillips he related that he was bisexual, presumed the de-

fendant likewise was, and that he and defendant had entered into a homosexual relationship until he was shot. In surrebuttal defendant recalled to the stand Jacqueline Cunningham, one of the State's witnesses, who related that on one occasion she saw the defendant kiss Dr. Phillips on the lips or cheek. Defendant's counsel then asked her if she had subsequently told Thomas of the incident, and the witness answered that she had not. Defendant's counsel sought to pursue his line of inquiry but the court sustained the prosecution's objection that it was not proper surrebuttal. Thereupon defendant's counsel made an offer of proof that if he was allowed to continue the witness would testify that she did tell Thomas of the kissing incident and that defendant was queer. Apparently the defendant wanted to raise the inference that Thomas was hostile to the defendant. The line of inquiry was not intended to and would not have shed any light on the State's rebuttal evidence, and no abuse of discretion in controlling the surrebuttal evidence was here shown. State v. Huff, 454 S.W.2d 920 (Mo.1970).

■ The third evidentiary ruling claimed to have been erroneous occurred during the cross-examination of Arnold Wells, a witness for the State. Defendant's counsel sought to show that Wells, a married man who resided in Columbus, Ohio, intended to accompany Mrs. Aernouts on a long vacation and that they planned to stay together the night in question. The trial court properly sustained an objection to the line of questioning because a witness in a criminal case may not be impeached by showing that his general reputation for morality is bad, and such an attack must be addressed directly to his reputation for truth and veracity. State v. Kain, 330 S.W.2d 842 (Mo.1960); State v. Lora, 305 S.W.2d 452 (Mo.1957).

The fourth error claimed to have been made occurred during the cross-examination of Mrs. Aernouts, also a State's witness. The record shows that the following occurred:

(By Mr. Ortbals)

"Q  On the trip to the Milner Hotel to pick up Ewing and Thomas, I believe you accompanied Mr. Wells on that?

"A  Yes sir.

"Q  Is it your testimony in that proceeding you did not go into the hotel bar and have a drink?

"A  I didn't go in and have a drink. We went in the bar, yes.

"Q  And you didn't tell me on this previous occasion—

"MR. FREDERICKS:  Objection—

"THE COURT: Yes—

"MR. FREDERICKS: Let me object to the form of these questions saying 'you didn't tell me'—there's no foundation for that type question.

"THE COURT: I will sustain the objection to the form of the question.

"MR. ORTBALS: I will try to rephrase it. Mrs. Aernouts, is it also your testimony on the evening in question, May 22, 1971, you say Roy Rand at the filling station with a tire tool in his hand?"

In short, the record shows that after the objection to the form of the question had been sustained counsel did not rephrase it, as he stated he would, but instead pursued another line of inquiry.

The fifth and last complaint of error concerns a similar situation which arose during the cross-examination of Jacqueline Cunningham, as previously stated, a witness for the State:

"Q  Did you actually hear Mr. Rand make this statement that your mother and Mr. Wells heard you make?

"A   Yes sir, I did because I had started —I was hollering at him—I was right there when he said it.

"Q   In that previous discussion we had—

"MR. FREDERICKS: I object to the form of the question about discussions between counsel and this witness, there's no background—

"MR. ORTBALS: I will withdraw it.

"THE COURT: It's withdrawn."

Obviously the court made no ruling other than to note that defendant's counsel had withdrawn the question.

Defendant maintains that the court erred in the manner in which it responded to a communication to the jury after it had deliberated for some time. The record shows that the following occurred in chambers, all counsel being present:

"THE COURT: Let the record show after approximately two hours and five minutes of deliberation, the jury buzzed and sent the following note up: 'A verdict has been reached; the jury seems deadlocked on the length of punishment; if the Court assesses punishment, will that term of punishment include psychiatric treatment for his homosexual problem?' Signed Dale F. Poertner, Foreman. I propose to answer 'In answer to the first portion of your inquiry, I refer you to Instruction No. 8.'—and the second part 'after sentencing defendant will be in the custody of the Missouri Department of Corrections. Do you disagree with that.

"MR. ORTBALS: Yes, I would disagree. Let me object to that  It is my belief in the light of the specific nature of the inquiry, which reflects an obvious jury concern, that I feel the specific question deserves a specific answer rather than a general one.

"MR. FREDERICKS: I would object to that, outside the scope of the Court's authority.

"MR. ORTBALS: The specific answer I would request is a simple 'yes' or 'no'.

"THE COURT: I prefer to do it the way I did.

"MR. ORTBALS: Of course, I hope the record would show this. Let the record show I object to the Instruction No. 8, based on State v. Brown.

"(Thereupon, the following was typed on the note sent to the Court by the jury and said note returned to the jury):

" 'Members of the Jury:

"In answer to the first portion of your inquiry, I refer you to Instruction No. 8.

"In answer to the second portion of your inquiry, after sentencing the defendant will be in the custody of the Missouri Department of Corrections.'."

In Instruction No. 8 the jury was told, in substance, that if it found the defendant guilty it should assess his punishment in accordance with other instructions of the court; and that if it agreed upon his guilt but was unable to agree upon the punishment to be assessed it might return a verdict that it had agreed as to the defendant's guilt but was unable to agree upon the punishment, and that in that event the court might assess the punishment.

■■   The first part of the communication from the jury clearly indicated that it had reached a verdict as to the defendant's guilt, but was unable to agree upon the punishment to be assessed. There can be no question as to the correctness of Instruction No. 8, State v. Brown, 443 S.W. 2d 805 (Mo.1969); and the method employed of responding to the jury's inquiry by referring it to an instruction given was proper. State v. Grant, 275 S.W.2d 332 (Mo.1955).

■   As to the second part of the jury's communication in which it inquired whether the term of punishment if assessed by

the court would include psychiatric treatment for his homosexual problem, it is apparent that that question, without the consideration of other factors, could not be answered by a categorical "yes" or "no" as proposed by defendant's counsel. See § 552.020, RSMo 1969, V.A.M.S. Here the trial court was not as blunt as that in State v. Duisen, 428 S.W.2d 169, 177 (Mo.1967), where it responded to the jury's inquiry as to whether parole was possible by replying that that question " . . . 'is not a matter of proper concern by the jury' . . . "; but while its response was framed in more polite language, the answer here to the second inquiry was to the same effect. We find no error.

Lastly, defendant maintains that the court erred in overruling his successive motions for a psychiatric examination, the first made during the course of the trial and the second in a separate motion at the time he filed his motion for a new trial. The record before us shows that after the defendant had been indicted, arraigned, and pleaded not guilty his appointed counsels filed a motion in which it was alleged that counsel had reasonable cause to believe, gained from their observation of defendant, that defendant was suffering from some mental disease or defect so that he lacked the capacity to understand the proceedings against him or to assist in his defense; and that he was indigent. It was prayed that the court order and direct the sheriff to take the defendant to Malcolm Bliss Hospital for a psychiatric examination and that the doctors of that institution examine defendant and report their findings to the court. The bare record before us shows that that motion was " . . . voluntarily withdrawn," but, concededly dehors the record, counsel states in their brief that it was withdrawn by them " . . . after the vigorous objection of the defendant to the filing of said motion, . . . "

As stated, defendant's trial theory, which counsel states was insisted upon by the defendant, was that of self-defense. Defendant took the stand, and while he was being vigorously cross-examined his counsel, out of the hearing of the jury, asked leave to withdraw the defense of self-defense and to be allowed to put on evidence to show the defendant's insanity. The court deferred an immediate ruling, but after the close of the State's rebuttal evidence, and before the defendant began the presentation of its surrebuttal, the subject of defendant's counsel's request for a psychiatric examination was again discussed, out of the hearing of the jury, and overruled by the court.

At the same time that defendant's counsel filed his motion for a new trial they also filed a separate motion for the appointment of a psychiatrist in which they again alleged that based on their observation of defendant and on certain medical reports in their possession they believed that the defendant was suffering from some mental disease or defect so that he lacked the capacity to understand the nature of the motion for a new trial and was unable to assist in further pursuing his cause. It was further alleged that defendant was indigent and without funds to employ the services of a psychiatrist. Attached to that motion was the affidavit of defendant's counsel in which they stated that they had examined the records of St. Elizabeth's Hospital, Belleville, Illinois, which showed that defendant had been a patient in that institution from January 10, 1970 to February 3, 1970; that he had been treated by a Doctor Hornung, who had diagnosed the defendant's condition as " . . . 'anxiety reaction, acute depression and emotionally unstable period' . . . "; and that the defendant had manifested suicidal tendencies and on January 10, 1970 had threatened to "leap out of a window." In the affidavit it was also stated that the hospital record further reflected a heavy reliance on pills and drugs, and that the defendant was " 'constantly demanding shots from hospital personnel throughout the course of his stay.' " The affidavit also contained the statement that the records of the same hospital showed an

admission of defendant from the St. Clair County Sheriff's office on February 16, 1971, and that while in custody of the sheriff, defendant had slashed his right wrist with a razor blade, inflicting a one and one-half inch laceration, which had to be closed with sutures. The motion for the appointment of a psychiatrist, as well as the motion for a new trial, was overruled; defendant was granted allocution, sentenced as stated, and this appeal followed.

Defendant argues (1) that a trial judge must either sua sponte or upon an appropriate motion order a psychiatric examination whenever he has reasonable cause to believe the accused is suffering from a mental defect or disease which excludes his capacity to understand the proceedings against him or to assist in his defense; (2) that the trial court should have had reasonable cause in the instant case; (3) that the failure to order such an examination was error; (4) for which error the appropriate relief is reversal and a new trial. For its part the State does not direct any responsive argument to the first of defendant's contentions, nor does it dispute the third, what a trial court should do if, in fact, it has reasonable cause to believe that an accused is mentally incompetent to stand trial. However, what the State does contend is that the trial court did not have such reasonable cause in the instant case; and that the record on this appeal establishes and supports the conclusion that the court's decision in determining the reasonable cause issue was not abused.

▪ The procedure specified in § 552.020 for obtaining an order for a psychiatric examination contemplates that in the usual course the motion requesting such an order will be made before trial. However, the Supreme Court stated in State v. Lowe, 442 S.W.2d 525, 529 (Mo. 1969):

"Section 552.020 pertaining to mental disease or defect excluding fitness to proceed with trial does not require that the motion provided for be filed at any particular time, and § 552.010 provides that no person who lacks such capacity shall be tried, convicted or sentenced so long as the incapacity exists. This implies that the motion can be made anytime before sentencing."

Accordingly, from the procedural standpoint neither the oral motion for such an examination made during the course of the trial, nor the similar post-trial motion made before sentencing, came too late. And inasmuch as the post-trial motion is the more inclusive and complete, we need consider only the merits of that motion.

▪ The critical issue here presented is not whether the accused was, in fact, suffering from a mental disease or defect. Rather, the question we are called upon to decide is whether the court had " . . . reasonable cause to believe" that the accused had " . . . a mental disease or defect excluding fitness to proceed . . . " Par. 2, Sec. 552.020. The terms " 'mental disease or defect' " are defined in § 552.010 as including "congenital and traumatic mental conditions as well as disease," but the greater part of that statutory definition is devoted to a declaration of what is not included within the term "mental disease or defect." The extent of the mental disease or defect from which the accused must be suffering so as to exclude legal responsibility for his actions, or his capacity to stand trial, is set forth in the first paragraph of § 552.020: "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." As stated in Pulliam v. State, 480 S.W.2d 896, 903 (Mo.1972):

"On the issue whether an accused is competent to stand trial or to plead, 'the "test must be whether he has sufficient present ability to consult with his lawyer

with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." ' Dusky v. United States, 362 U.S. 402, 80 S. Ct. 788, 789, 4 L.Ed.2d 824; Wolf v. United States, 10 Cir., 430 F.2d 443, 444 [1]."

■ With those guidelines in mind we turn to a consideration of the motion and the affidavit in support thereof. All that was alleged in the motion itself is that counsel believed, based on their observation of the defendant, that he was suffering from some mental disease or defect to the extent that he lacked the capacity to understand the nature of the motion for a new trial and was unable to assist in further pursuing his causes. No facts regarding their observations of defendant's behavior or lack of mental capacity, nor any other facts which might serve as a basis for the formation of counsel's belief were stated in the motion, and without more their mere conclusion can scarcely be said to have been sufficient to raise a reasonable doubt in the mind of the court that defendant was suffering from a mental disease or defect.

■ Nor are the various matters set forth in counsel's affidavit, whether viewed individually or cumulatively, sufficient to raise such a reasonable doubt that the court can be said to have erred in refusing to order a psychiatric examination. All that was shown by the diagnosis of Dr. Hornung, as reflected in the records of St. Elizabeth's Hospital, was "anxiety reaction, acute depression and emotionally unstable period." The anxiety reaction and depression referred to may have accounted for defendant's threat to leap out of the window, or his subsequent attempt to commit suicide by slashing his wrist, but neither the Doctor's diagnosis nor his threat or action compel the court to conclude that reasonable cause existed for the belief that appellant was unable to participate in his defense, cooperate with his counsel, and

understand the proceedings. In the recent case of State v. Harris, 477 S.W.2d 42, 45 (Mo.1972), where it was shown that the accused had previously undergone psychiatric treatment, the Supreme Court said, " . . . Remote unspecific incidents of psychiatric treatment do not compel a trial court to grant a defendant's motion, . . . " and upheld the action of the court in denying the motion for a psychiatric examination. Counsel's affidavit is silent as to the nature of the pills and drugs defendant is said to have relied on while he was in the hospital, nor the kind of "shots" he demanded from the hospital personnel. Whatever their nature, or the purpose for which they were administered or demanded, there is nothing in that part of the affidavit which indicates a drug abuse with a concomitant psychosis, as required by § 552.010. See Jones v. State, 471 S.W.2d 223 (Mo.1971).

Not stated as grounds in support of the motion for a psychiatric examination are two matters suggested by our review of the record. The first concerns the question of the defendant's homosexuality. Defendant denied on the stand that he was a homosexual, but in any event § 552.010 expressly provides that the "terms 'mental disease or defect' do not include . . . an abnormality manifested only by criminal sexual psychopathy as defined in section 202.-700 . . . " The other matter concerns defendant's insistence, contrary to the advice of both of his counsel, that the video tape of defendant's confession be introduced into evidence and shown to the jury. Prior to permitting that to be done the court examined the defendant at length out of the hearing of the jury, during which examination the defendant acknowledged that both of his counsel had viewed the video tape and had advised him that it would be to his disadvantage to introduce and show it; that his attorneys had also informed him that in their considered opinion it would be detrimental to his best interest to do so; that he understood that if it was shown it would be against his counsels' better judgment; but that he was in-

sisting that the tape be shown. The court's questions were meticulously explicit, and the defendant's answers rational, so far as indicated by the record. Obviously the defendant differed with his counsel in his trial strategy, but if the defendant understood that he was acting contrary to the advice of his counsel, as the court developed by its questioning of the defendant, his insistence upon his opinion, without more, would not compel the court to reasonably conclude that the defendant lacked sufficient mental capacity.

Other than the motion, which did not prove itself, and the affidavit, no evidence was introduced in support of the motion. No witness testified that the defendant lacked sufficient mental capacity, or that the defendant had exhibited any peculiarities or idiosyncrasy which would form the basis for a laymen's opinion in that regard. It must be kept in mind that the motion in this case was made after a trial which lasted for three days, during which time the court had the opportunity to observe the appearance and demeanor of the defendant, particularly while he was a witness in his own behalf. Contrary to the situation shown in the landmark case of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L. Ed.2d 815, the record in the case reflects no incident occurred upon the trial which in itself would in any manner cast doubt upon the correctness of the trial court's ruling on the motion. State v. Harris, supra. It is true, as the court noted during the colloquy at the time that the oral motion was first made, that at times the defendant's opinion as ot the strategy to be employed in his defense differed from that suggested by his counsel. But it is also true the experienced judge who presided at the trial observed of the defendant:

"THE COURT: I can only say this. It has been my observation of this man that he sat calmly and coolly throughout this trial, that during the course of the video tape confession that you presented in your case he seemed to be mentally alert, he seemed to be articulate. I have observed him during the examination on the stand. He appeared to be able to comprehend every question that was asked of him, he was more articulate and at times dramatic in his testimony before this jury. And, at this time, for me to adjourn this trial to comply with the necessary mental questions—I don't know. I am going to give it some thought, but let's go along with your case at this time. We are not going to interrupt the trial at this stage."

The judgment is affirmed.

All concur.