James **HEMPHILL**, Jr., Appellant,

v.

**STATE of Missouri**, Respondent.

No. 59931.

Supreme Court of Missouri,
En Banc.

April 28, 1978.

Warren H. Kawin, St. Louis, for appellant.

Robert L. Presson, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

James Hemphill appeals from the trial court's denial of his Rule 27.26 [1] motion to vacate judgment and sentence of forty years imprisonment imposed pursuant to the jury's guilty verdict for the offense of second degree murder. That judgment of conviction was affirmed on direct appeal in *State v. Hemphill*, 460 S.W.2d 648 (Mo. 1970).

This cause was appealed to the Missouri Court of Appeals, St. Louis District and, after opinion affirming in that court, was transferred here under Rule 83.03 for determination as though on original appeal. Mo. Const. Art. V, § 10.

For his first point appellant contends the trial court's finding that the state did not deliberately suppress or fail to disclose evidence of the existence of a knife which the victim is alleged to have had when shot by appellant was clearly erroneous because: (1) The Circuit Attorney in the criminal trial knew: (a) there was testimony at the coroner's inquest that the victim had a knife, (b) that Lee Nalls, brother of the victim, had been convicted of stealing a knife in August of 1967; (2) The Assistant Circuit Attorney at the motion hearing admitted the victim had a knife. Portions of the evidence from the original trial are necessary to an understanding of these contentions.

On January 19, 1968, the victim of this homicide, James Smith, with three compan-

---

1. All references to Rules are to Supreme Court Rules, V.A.M.R.

ions (his brother, Lee Nalls; his uncle, Robert Haymore, and a friend Anthony Williams) went to a pool hall near Haymore's home. While there Smith was fatally shot by appellant (defendant there) who, though admitting having shot Smith, maintained it was in self-defense. Appellant testified that while he was arguing with Smith's younger brother, Smith approached him, putting his hand into his inside pocket as if to go for a weapon and it was then he shot him. Appellant did not see a weapon but defense witnesses, Jackson and Higgins, testified that Smith reached for his inside pocket as if pulling something out before he was shot. They both testified that while Smith was lying on the floor before the police arrived, someone removed a knife from his body. Higgins further testified he could not describe or identify the person who removed the knife and both Jackson and Higgins admitted they had not told the police about the knife. On cross-examination, Jackson also admitted that when first interviewed by the police he stated he knew nothing of the shooting.

Witnesses for the State, on the other hand, testified they saw no knife on the victim and Nalls, brother of the deceased, testified that to the best of his knowledge Smith was not carrying a weapon. Anthony Williams stated he did not see anyone take a knife from Smith's body and on cross-examination reiterated, "Like I said, I didn't see anybody take nothing off him, but I still saw James Smith laying there on the floor." Appellant now asserts the foregoing, coupled with other evidence, indicates the state had possession of the knife or knowledge concerning its whereabouts which it wrongfully suppressed. During trial defense witness Carl Higgins, who as noted above, testified on direct examination that someone had removed a knife from the deceased, admitted on cross-examination he did not know the name of the man who had allegedly removed the knife, and when confronted with apparently prior inconsistent statements from his testimony in the coroner's inquest he contended the transcript was incorrect. As he described it, "This is where they fouled up the statement. . . ."

Pressing the cross-examination, the Circuit Attorney inquired "You never told the policeman about the knife?" "A. The only time the knife was mentioned was during the inquest."

■ As stated by this court in *State v. Thompson*, 396 S.W.2d 697, 700 (Mo.banc 1965), "suppression of (or failure to disclose) evidence in the possession or control of the prosecution which is favorable to defendant and which might be persuasive to a jury, constitutes such a fundamental unfairness as to invalidate a conviction because violative of due process." While this general statement of the law is correct, petitioner has fallen far short of proving suppression or failure to disclose. The fact that evidence was elicited at the coroner's inquest from Carl Higgins, later a witness for the defense, indicating that James Smith had a knife, does not establish such is the fact or prove suppression. In addition, the fact that Higgins had so testified at the inquest was as well known to appellant as to the State and it was appellant who called Higgins as a witness eliciting favorable testimony that a knife had been removed from Smith's person. Defense witness Jackson testified to essentially the same facts and from this we conclude the defense had information equal or superior to that of the State.

Appellant also contends the prosecutor knew that many months earlier Lee Nalls, brother of the victim, had been convicted of stealing a knife (the record indicates it was a dagger) and that this evidence bolsters appellant's attempt to show the victim had a knife which in turn supports petitioner's claim of suppression. The trial court properly ruled such was "purely conjecture and speculation."

During the hearing, movant's counsel asked witness James Bell (defense counsel in the criminal trial) if he had talked to Nalls since the trial and whether Nalls had told him that the victim had a knife at the time of the slaying. This line of inquiry was objected to as hearsay and during a colloquy with respect to the State's objection, the following occurred:

"Mr. Kawin: [Petitioner's counsel] Mr. Nalls would testify that the victim in this original trial did have a knife.

"Mr. Chancellor: [Assistant Circuit Attorney] The State stipulates that is true, *the victim did have a knife*. (Emphasis ours.) There is no question about that. It was found on his person.

"The Court: And that matter—what was the objection?

"Mr. Chancellor: The objection to what his statement is, what somebody else said in this record would be hearsay. However, the fact that the victim had a knife came out in the first trial.

"Mr. Kawin: Well, there was conflicting evidence.

"The Court: The objection be sustained.

"Mr. Kawin: We make this as an offer of proof, Your Honor.

"The Court: All right.

"Mr. Kawin: Since we don't have the proof we make it as an offer of proof, Your Honor.

"The Court: All right."

■ Appellant now contends the State is bound by Chancellor's statement that "the victim did have a knife" and reasons from this that the State, having knowledge, must have possessed the knife and suppressed its use as evidence. It is clear from the record of that colloquy that the basis for Chancellor's statement was the testimony at the original trial. The trial transcript reveals that though there was testimony from defense witnesses Jackson and Higgins that they saw a knife taken from the victim, others testified to the contrary. The disputed fact issue, of knife vis-a-vis no knife, was for the jury. Clearly the Assistant Circuit Attorney was mistaken as to the contents of the transcript and this mistake was recognized by petitioner's counsel who advised the court that "there was conflicting evidence" on the issue. James Darst, prosecutor in the criminal trial, testified to facts explanatory of and contrary to Chancellor's statement and stated categorically he had not suppressed evidence concerning any knife. Appellant contends the "stipula-

tion" by Chancellor, coupled with all the circumstances, establishes his point as to the State's suppression or failure to disclose evidence vital to the defense. We do not agree. While it is important to the orderly administration of the judicial process that admissions and stipulations of counsel when acted upon be given full credence, *State v. Levy*, 262 Mo. 181, 170 S.W. 1114, 1117 (1914); "[I]mprovident or erroneous statements or admissions resulting from unguarded expressions or mistake should not be binding on the client." *Kansas City v. Martin*, 391 S.W.2d 608, 615 (Mo.App.1965).

■ The statement of fact made by the State's attorney was a mistake, refuted by the transcript upon which he based his statement. Further, petitioner did not act upon the statement to his detriment and was aware the evidence was in conflict. The testimony of the original trial prosecutor contradicted Chancellor's statement and there was no evidence presented at the inquest, the trial or at the motion hearing in this proceeding that a knife was recovered or in possession of the State or any person subject to its control. The only testimony concerning its existence came from witnesses whose credibility was brought into question and who could not describe or identify the person that allegedly removed the knife from the victim. This can hardly rise to the level of absolute proof that the victim, James Smith, had a knife on his person at the time of the shooting and that the State had knowledge or possession of such knife and suppressed the same to appellant's detriment. Neither was the State required, as movant suggests, to call Jackson and Higgins as witnesses because they knew something of the charge against him. *State v. Collor*, 502 S.W.2d 258, 260[5] (Mo.1973).

■ In connection with this point petitioner also contends that the State suppressed evidence of the pellet that was removed from the victim. The issue was raised in the motion but we find no reference to that issue in the transcript of the motion hearing or the extensive post-hearing memorandum filed by appellant. Thus

the issue, improperly preserved, is not reviewable here. *Myrick v. State*, 507 S.W.2d 42 (Mo.App.1974). Additionally we note the fact of the pellet's existence was in evidence and known to appellant who admitted the shooting. Production of the pellet was necessary neither to the prosecution nor the defense, its existence was not concealed nor has there been a showing that failure to produce was prejudicial. See *Malone v. State*, 461 S.W.2d 727 (Mo.1971). The contention is denied.

■ Appellant's next point that there was no evidence showing the victim died after being shot by appellant is a general attack on the sufficiency of the evidence to sustain the verdict, not cognizable in this Rule 27.26 proceeding. *Barker v. State*, 505 S.W.2d 448 (Mo.App.1974); *State v. Schaffer*, 454 S.W.2d 60 (Mo.1970); *Robinson v. State*, 491 S.W.2d 314 (Mo.1973); *Bradley v. State*, 494 S.W.2d 45 (Mo.1973).

■ For his third point, appellant contends the forty year sentence for murder in the second degree (1) is excessive under the law and (2) violates his constitutional rights. The punishment authorized by statute for second degree murder is "imprisonment in the penitentiary not less than ten years," § 559.030, RSMo 1959, and the section declares no durational limit. Read in connection with § 546.490, RSMo 1959, the permissible punishment includes "imprisonment during his natural life, or for any number of years not less than such as are prescribed." The sentence imposed is within the statutory range and under the circumstances here is not excessive under the law. *State v. Stephens*, 507 S.W.2d 18, 22 (Mo.banc 1974).

■ Appellant's vaguely stated constitutional challenge under this point is the "sentence of forty years for murder in the second degree violates appellant's constitutional rights." From the argument we have gleaned the following. In 1968, murder in the first degree was defined by § 559.010, RSMo 1959, as "Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing . . ." and § 559.020, RSMo 1959, referencing the preceding section defined murder in the second degree as "All other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree." Defendant argues that these sections make second degree murder a common law offense which "should be governed by VAMS 556.110," which provides: "Punishment by virtue of the common law shall in nowise be other than by fine or imprisonment, or both, and such fine shall not exceed one hundred dollars, and the term of such imprisonment shall not exceed two months; nor shall any of the British statutes for the punishment of crimes and misdemeanors be in force in this state." This contention is without merit. Section 559.020 proscribes certain acts which by statute are declared second degree murder. Among the acts so proscribed are "all other kinds of murder at common law," which by reference become incorporated in the statute. Section 556.110 contemplates acts not so incorporated and proscribed by statute, which may otherwise be punishable at common law.

■ Appellant further argues that the punishment here imposed "obviously is predicated upon the provisions of V.A.M.S. § 559.030 in effect at the time of the offense, which states: 'Upon the trial *of an indictment* for murder in the first degree, the jury must inquire, and by their verdict ascertain, under the instructions of the court, whether the defendant be guilty of murder in the first or second degree; and persons convicted of murder in the first degree shall suffer death, or be punished by imprisonment in the penitentiary during their natural lives; those convicted of murder *in the second degree* shall be punished by imprisonment in the penitentiary not less than *ten years*. (Emphasis supplied.)'" Pointing to the term *indictment*, appellant contends the punishment for murder, either first degree or second degree authorized by § 559.030, is applicable *only* when charged by *indictment*, and only when that indictment charged murder in the first degree.

Thus, he argues, any second degree murder conviction must stem from a first degree murder indictment to be punishable under § 559.030. A similar argument was considered concerning a defendant tried for an assault with intent to commit a felony in *State v. Higgins*, 252 S.W.2d 641 (Mo.App. 1952). There appellant contended he could not be legally convicted of common assault under § 556.230, RSMo 1949, because he was charged upon an information, not by indictment. Section 556.230 read: "Upon an indictment for an assault with intent to commit a felony, or for a felonious assault, the defendant may be convicted of a less offense; and in all other cases, whether prosecuted by indictment or information, the jury or court trying the case may find the defendant not guilty of the offense as charged, and find him guilty of any offense, the commission of which is necessarily included in that charged against him." The court summarized appellant's argument (essentially that of appellant at bar), as follows: "Appellant contends that the foregoing statute must be strictly construed and confined to those cases where one being tried for assault with intent to commit a felony is charged by indictment." The *Higgins* court pointed out that in Missouri's early history, felonies could be prosecuted only by indictment; *State v. Bonner*, 178 Mo. 424, 77 S.W. 463 (1903), however, by amendment to the constitution in 1900, indictments and informations became concurrent methods for prosecuting felonies. And in 1901, § 2482 was enacted to provide "that trial and all proceedings upon any information filed in a court of record shall be governed by the law and practice applicable to trials upon indictments in said court." That statute was the predecessor to § 546.-010, RSMo 1959, in force at the time of the offense committed here. The court in *Higgins* concluded "It is our opinion that said section [546.010], when read in connection with Section 556.230, supra, authorizes a conviction for common assault where the person being tried is charged by information with an assault with intent to commit a felony." The well reasoned plan of statutory interpretation in that case is applicable

here. We hold that appellant was properly charged under § 559.020 and punished under § 559.030 and the contention is denied.

The fourth point raised by appellant goes to the jury selection process, charging the statutory system constitutionally infirm by its exclusion of recognized groups and classes of persons, thus violating appellant's rights "to trial by jury and the right not to be deprived of his liberty without due process of law." Appellant's complaint seems based on his assertion that doctors and dentists are *excluded* by statute from jury service. Such contention is without merit because § 494.031 provides *exemption* for certain individuals from jury service "upon their timely application to the court" and those named include "[a]ny person licensed to engage in and actually engaged in the practice of medicine, osteopathy, chiropractic or dentistry." Persons in the named classes may opt from jury service but are not automatically excluded. Exemptions of this sort were recognized with approval by this court in *State v. Duren*, 556 S.W.2d 11, 14 (Mo.banc 1977), wherein it was stated, "Proper exemptions from jury service are permitted to promote the orderly and efficient operation of overloaded judicial systems." The constitutional complaint is denied.

Appellant alternatively argues that the jury selection process was violated in that doctors and dentists were automatically excluded by action of the jury commissioner rather than requiring timely application to the court for excuse under § 494.031. Contrary to this assertion of fact, the trial court in its finding states, "The jury commissioner testified that the jury panels are picked in accordance with the statute and that no attempt was made to exclude anyone who was legally entitled to serve although some are excluded upon request for good and valid reasons, including doctors for obvious reasons. There is no evidence that any doctor or anyone else who was entitled to serve was systematically excluded." If there was conflict in the testimony, it was resolved unfavorably to appellant's position and there is no showing that this

decision was clearly erroneous. *Blanchard v. State,* 504 S.W.2d 180 (Mo.App.1973); *Skaggs v. State,* 476 S.W.2d 524 (Mo.1972); *Crosswhite v. State,* 426 S.W.2d 67 (Mo. 1968). However, if there was a variance from the statutory selection process sufficient to support a challenge to the array and information thereof was available to appellant, such question should have been raised prior to trial. Appellant's claim as to improper exclusion came too late. See *State v. Hermann,* 283 S.W.2d 617 (Mo. 1955); see also *State v. Hemphill,* 460 S.W.2d 648, 650 (Mo.1970).

Appellant next charges ineffective assistance of appellate counsel stemming from his retained counsel's failure to brief many of the errors alleged in the motion for new trial. On the other hand, respondent asserts that the issue of ineffective assistance of appellate counsel is a claim not properly cognizable by the trial court under Rule 27.26, citing *State v. Schaffer,* 383 S.W.2d 698 (Mo.1964). In response to a contention similar to that of appellant here, the court in *Schaffer* stated,

"We are not authorized to consider that contention in this proceeding. This for the reason that if the point should be found to be meritorious it would not result in an order setting aside the judgment of conviction in the trial court. If defendant was denied due process because he did not have counsel on appeal the appropriate relief would be to vacate our judgment affirming the conviction and the cause would then be redocketed for another hearing in this court."

Similarly this court in *Gerberding v. State,* 433 S.W.2d 820, 824 (Mo.1968) stated,

"We do point out however that one claim asserted by movant may not be reached by a motion under Rule 27.26. Movant, in paragraph 8(c), claims that his original appeal was neither briefed nor argued by his counsel, thus depriving him of effective assistance of counsel. We have heretofore held that such a claim is not properly addressed to the trial court and that such relief may not be granted in a proceeding under Rule 27.26. *State*

*v. Schaffer,* 383 S.W.2d 698, 700[7, 8]. In *Swenson v. Bosler,* 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33, and *Swenson v. Donnell,* 8 Cir., 382 F.2d 248, it was held that an indigent defendant is entitled to be represented by counsel on appeal and to have his case briefed by counsel. The defendants in both of those cases had been represented by appointed counsel, neither of whom filed any brief on their original appeal. The absence of such brief entitled those defendants to have the affirmance of their conviction set aside, the appeal redocketed, counsel appointed and directions given to such counsel to file briefs on behalf of said defendants. Such relief was given on motion filed in this court.

"If movant is entitled to relief under the doctrine of Bosler or Donnell, he must seek that relief from this court rather than in a motion filed in the trial court under Rule 27.26."

In *Wilwording v. State,* 438 S.W.2d 447 (Mo.1969), involving a proceeding for postconviction relief, counsel withdrew after trial and had no further connection with the case until he was appointed to pursue the appeal. He then filed an appellate brief and inquired of this court whether he should appear to argue. The court's response set out in *Wilwording, supra* at 450, was:

"He was advised that the court liked to have an oral argument, but that it was optional with counsel. Counsel then chose not to argue the case, but to submit it upon briefs. Counsel is a very experienced lawyer, having tried over 300 criminal cases, as this record shows. At no place does it appear that he was in any way ineffective, and the trial court's findings and conclusions in this and other respects are not clearly erroneous. *Cross-White v. State,* Mo., 426 S.W.2d 67, 70, 71."

In the well reasoned concurring opinion, which agreed there was no merit to defendant's contention, it was stated, "Even if he were entitled to relief on this ground, it could not have been given by the trial

court. Such relief would be obtainable only *by motion in this court to vacate our judgment affirming the conviction and to re-docket the case for argument.*" (Emphasis added.)

The procedure prescribed in *Schaffer, Gerberding* and the concurring opinion of *Wilwording* was followed by the Court of Appeals in *Roulette v. State,* 504 S.W.2d 331, 332 (Mo.App.1973). Recently, however, in *Duncan v. State,* 520 S.W.2d 123 (Mo.App.1975) and *Boyer v. State,* 527 S.W.2d 432 (Mo.App.1975), the Court of Appeals reviewed judgments of the trial court on such issues originally entertained by the trial court. In neither case did the State appear to have raised the point or objected to such review by the appellate court. Here however respondent raised the point, contending the issue is not properly cognizable under Missouri Rule 27.26 which authorizes the trial court to set aside a judgment of conviction for infirmities arising from trial proceedings only. Relief from defects in proceedings before the appellate courts are beyond the scope of the remedy and such relief should be sought only in the appellate court of rendition and there by motion to recall the mandate, vacate the sentence of affirmance and redocket the cause for rehearing.

Appellant urges that we declare trial courts, in Rule 27.26 proceedings for post-conviction relief, are authorized to consider the issue of ineffective assistance of appellate counsel, arguing that to hold otherwise would "violate the letter and spirit of the Rule." He also argues this procedure would keep fact finding hearings in the trial court and avoid burdening the appellate system with such duties. Finally, he claims the action of the trial court entering a judgment of conviction is and should be entitled to be subject to later modification by the trial court. These arguments miss the point. Here the efficacy of the conviction is challenged not for matters occurring in the trial process but for acts or omissions of counsel in the appellate process and their contaminating effect on that appeal. The appellate court, rendering the final judgment in the appeal, is in the best position to rule and determine such issues. It is there the briefs are presented, argument heard and the effect of the conduct of appellate counsel as it bears on the issue of "ineffective assistance" may best be determined. For these reasons we reaffirm our divisional opinions in *Schaffer* and *Gerberding* and reassert as proper the course of action prescribed in those cases for dealing with such issues. The point is denied.

Appellant's final contention is merely a reiteration of arguments hereinabove ruled. The judgment is affirmed.

All concur.